ACCEPTED
04-15-00029-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/16/2015 12:34:31 PM
KEITH HOTTLE
CLERK

04-15-00029-CV

IN THE
FOURTH COURT OF APPEALS
AT SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/17/2015 12:34:31 PM
KEITH B. HOTTLE
Clerk

DIAGNOSTICS RESEARCH GROUP, L.L.C. AND JOHN R. HOLCOMB, M.D.
Appellants

v.

SUSHMA VORA
Appellee

On Accelerated Appeal from the 407th Judicial District Court, Bexar County,
Cause No. 2013-CI-00357; *Sushma Vora v. Forest Laboratories, Inc., Forest
Research Institute, Inc., Ironwood Pharmaceuticals Corporation, Diagnostics
Research Group, John R. Holcomb, M.D.*

## BRIEF OF APPELLANTS,
## DIAGNOSTICS RESEARCH GROUP, L.L.C. AND JOHN R. HOLCOMB, M.D.

BRETT B. ROWE
State Bar No. 17331750
MATTHEW M. EDWARDS
State Bar No. 24032034
CHRISTINA HERRERA
State Bar No. 24043726
EVANS ROWE & HOLBROOK, P.C.
10101 Reunion Place, Suite 900
San Antonio, Texas 78216
Direct Line: (210) 384-3271
Facsimile:   (210) 340-6664
Email:       bbrowe@evans-rowe.com
ATTORNEYS FOR APPELLANTS,
DIAGNOSTICS RESEARCH GROUP,
L.L.C. AND JOHN R. HOLCOMB, M.D.

APPELLANTS REQUEST ORAL ARGUMENT

04-15-00029-CV

IN THE
FOURTH COURT OF APPEALS
AT SAN ANTONIO, TEXAS

---

DIAGNOSTICS RESEARCH GROUP, L.L.C. AND JOHN R. HOLCOMB, M.D.
Appellants

v.

SUSHMA VORA
Appellee

---

On Accelerated Appeal from the 407th Judicial District Court, Bexar County, Cause No. 2013-CI-00357; *Sushma Vora v. Forest Laboratories, Inc., Forest Research Institute, Inc., Ironwood Pharmaceuticals Corporation, Diagnostics Research Group, John R. Holcomb, M.D.*

---

**BRIEF OF APPELLANTS,
DIAGNOSTICS RESEARCH GROUP, L.L.C. AND JOHN R. HOLCOMB, M.D.**

---

BRETT B. ROWE
State Bar No. 17331750
MATTHEW M. EDWARDS
State Bar No. 24032034
CHRISTINA HERRERA
State Bar No. 24043726
EVANS ROWE & HOLBROOK, P.C.
10101 Reunion Place, Suite 900
San Antonio, Texas 78216
Direct Line:  (210) 384-3271
Facsimile:   (210) 340-6664
Email:      bbrowe@evans-rowe.com
ATTORNEYS FOR APPELLANTS,
DIAGNOSTICS RESEARCH GROUP,
L.L.C. AND JOHN R. HOLCOMB, M.D.

APPELLANTS REQUEST ORAL ARGUMENT

i

04-15-00029-CV

IN THE
FOURTH COURT OF APPEALS
AT SAN ANTONIO, TEXAS

---

DIAGNOSTICS RESEARCH GROUP, L.L.C. AND JOHN R. HOLCOMB, M.D.
Appellants

v.

SUSHMA VORA
Appellee

---

On Accelerated Appeal from the 407th Judicial District Court, Bexar County,
Cause No. 2013-CI-00357; *Sushma Vora v. Forest Laboratories, Inc., Forest
Research Institute, Inc., Ironwood Pharmaceuticals Corporation, Diagnostics
Research Group, John R. Holcomb, M.D.*

---

## IDENTITY OF PARTIES & COUNSEL

---

DIAGNOSTICS RESEARCH GROUP, L.L.C. AND JOHN R. HOLCOMB, M.D.,
Appellants
BY: BRETT B. ROWE
State Bar No. 17331750
MATTHEW M. EDWARDS
State Bar No. 24032034
CHRISTINA HERRERA
State Bar No. 24043726
EVANS ROWE & HOLBROOK, P.C.
10101 Reunion Place, Suite 900
San Antonio, Texas 78216
Direct Line: (210) 384-3271
Facsimile: (210) 340-6664
Email: bbrowe@evans-rowe.com

SUSHMA VORA,
Appellee
BY: CHRISTOPHER J. DEEVES
State Bar No. 00790575

ii

THE LAW OFFICE OF CHRISTOPHER DEEVES, P.C.
1370 Pantheon Way, Suite 110
San Antonio, Texas 78232
T: (210) 445-8807
F: (210) 501-0915
Email: chrisdeeves@att.net

BETH S. JANICEK
State Bar No. 00788495
JANICEK LAW FIRM, P.C.
1100 NE Loop 410, Suite 550
San Antonio, TX 78209
T: (210) 366-4949
F: (210) 979-6804
Email: beth@janiceklaw.com

FOREST LABORATORIES, INC. AND
FOREST RESEARCH INSTITUTE, INC.,
Interested Parties
      BY:   HARVEY FERGUSON, JR.
            State Bar No. 06913500
            BENJAMIN C. NICHOLS
            State Bar No. 24032786
            HOBLIT FERGUSON DARLING, L.L.P.
            Bank of America Plaza
            300 Convent Street, Suite 140
            San Antonio, Texas 78250
            T: (210) 224-9991
            F: (210) 226-1544
            Email: hferguson@hfdlaw.com

            Joseph P. Thomas
            Ohio Bar No. 0040379
            Jeffrey D. Geoppinger
            Ohio Bar No. 0073908
            ULMER & BERNE, L.L.P.
            600 Vine Street, Suite 2800
            Cincinnati, Ohio 45202-2409
            T: (513) 698-5000
            F: (513) 698-5001
            jthomas@ulmer.com

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL ............................................................................ ii

INDEX OF AUTHORITIES ..................................................................................... vi

STATEMENT OF THE CASE .................................................................................. 2

STATEMENT OF JURISDICTION .......................................................................... 3

ISSUE PRESENTED............................................................................................... 3

STATEMENT OF FACTS........................................................................................ 3

SUMMARY OF THE ARGUMENT.......................................................................... 5

ARGUMENT AND AUTHORITIES.......................................................................... 7

    ISSUE 1.    The trial court abused its discretion in holding that Appellee's claim against Diagnostics Research Group, L.L.C. is not a "health care liability" claim under Section 74.001(a)(13) of the Texas Civil Practice & Remedies Code ............................................................................... 7

    ISSUE 2.    The trial court abused its discretion in denying Appellants' motion to dismiss because Dr. Mulroy is not a qualified expert under Sections 74.351(r)(5), 74.401, and 74.402 of the Texas Civil Practice & Remedies Code ...................................................................... 18

    ISSUE 3.    The trial court abused its discretion in denying Appellants' motion to dismiss because Dr. Mulroy's report is merely conclusory with regard to the necessary element of causation and therefore does not constitute a good faith effort to comply with the statutory expert report requirement of Section 74.351(a) of the Texas Civil Practice & Remedies Code ........................................ 24

CONCLUSION........................................................................................................ 32

PRAYER................................................................................................................. 33

CERTIFICATE OF SERVICE................................................................................. 34

APPENDIX ........................................................................................ 35

# INDEX OF AUTHORITIES

## CASES

*Am. Transitional Care Ctrs. of Texas, Inc. v. Palacios*
46 S.W.3d 873 (Tex. 2001) ............................................................... 24, 25

*Austin Heart, P.A. v. Webb*
228 S.W.3d 276 (Tex. App.–Austin 2007, no pet.)................................ 29

*Bioderm Skin Care, LLC v. Sok*
426 S.W.3d 753 (Tex. 2014) .......................................... 7, 8, 9, 10, 17

*Bogar v. Esparza*
257 S.W.3d 354 (Tex. App.–Austin 2008, no pet).............................. 20

*Bowie Mem'l Hosp. v. Wright*
79 S.W.3d 48 (Tex. 2002) (per curiam)....................... 7, 25, 26, 27, 31

*Broders v. Heise*
924 S.W.2d 148 (Tex. 1996) ...................................................... 7, 19, 20

*Castillo v. August*
248 S.W.3d 874 (Tex. App.–El Paso 2008, no pet.) ........................... 30

*Collini v. Pustejovsky*
280 S.W.3d 456 (Tex. App.–Fort Worth 2009, no pet.)............. 21, 24, 30

*Cook v. Spears*
275 S.W.3d 577 (Tex. App.-Dallas 2008, no pet.) .............................. 25

*Diversicare Gen. Partner, Inc. v. Rubio*
185 S.W.3d 842 (Tex. 2005) ............................................... 8, 13, 14

*Farishta v. Tenet Healthsystem Hosp. Dallas, Inc.*
224 S.W.3d 448 (Tex. App.–Ft. Worth 2007, no pet.)............................ 20

*Hill County San Antonio Mgmt. Servs., Inc. v. Trejo,*
424 S.W.3d 203 (Tex. App.–San Antonio 2014, pet. dism'd)...............7

*Hutchinson v. Montemayor*
144 S.W.3d 614, 617 (Tex. App.-San Antonio 2004, no pet.) ...... 25, 27

*In Re McAllen Med. Ctr.*
275 S.W.3d 458 (Tex. 2008) ........................................................... 32

*Jelinek v. Casas*
328 S.W.3d 526 (Tex. 2010) ........................................................... 26

*Jones v. King*
255 S.W.3d 156 (Tex. App.–San Antonio 2008, pet. denied) ................. 26, 27, 29

*Loasiga v. Cerda*
379 S.W.3d 248 (Tex. 2014) ........................................................... 8, 13

*Larson v. Downing*
197 S.W.3d 303 (Tex. 2006) (per curiam) ........................................... 7

*Lewis v. Funderburk*
253 S.W.3d 204 (Tex. 2008) ........................................................... 3

*Longino v. Crosswhite*
183 S.W.3d 913 (Tex. App.–Texarkana 2006, no pet.) ............................... 30, 31

*Lopez v. Osuna*
No. 04-14-00310-CV, 2014 WL 6687317 (Tex.App.—San Antonio
Nov. 26, 2014, no pet. h.) .............................................................. 16, 17

*Marks v. St. Luke's Episcopal Hosp.*
319 S.W.3d 658 (Tex. 2010) ........................................................... 7

*Martinez-Partido v. Methodist Specialty & Transplant Hosp.*
327 S.W.3d 274 (Tex. App.–San Antonio 2010, no pet.) ........................... 20

*McIntyre v. Ramirez*
109 S.W.3d 741 (Tex. 2003) ........................................................... 8

*Mem'l Hermann Healthcare Sys. v. Burrell*
230 S.W.3d 755 (Tex. App.–Houston [14th Dist.] 2007, no pet.) ................. 20

*Molinet v. Kimbrell*
356 S.W.3d 407 (Tex. 2011) ........................................................... 7

*Murphy v. Russell*
167 S.W.3d 835 (Tex. 2005) (per curiam) ........................................... 15

*Olveda v. Sepulveda*
141 S.W.3d 679 (Tex. App.—San Antonio 2004, pet. denied)............................ 20

*Peterson Reg'l Med. Ctr. v. O'Connell*
387 S.W.3d 889 (Tex. App.–San Antonio 2012, pet. denied) ........................ 7, 26

*Rittmer v. Garza*
65 S.W.3d 718 (Tex. App.–Houston [14th Dist.] 2001, no pet.) ........................ 27

*Savaseniorcare Admin. Servs., L.L.C. v. Cantu*
No. 04-14-00329-CV, 2014 WL 5352093 (Tex. App.–San Antonio
October 22, 2014, no pet. h.) ................................................................ 28

*Scoresby v. Santillan*
346 S.W.3d 546, 556 (Tex. 2011) ........................................................... 25

*Tenet Hosps. Ltd. v. Love*
347 S.W.3d 743 (Tex. App.–El Paso 2011, no pet.) ....................................... 19

*Tex. Laurel Ridge Hosp., L.P. v. Almazan*
374 S.W.3d 601 (Tex. App.–San Antonio 2012, no pet.) ............................... 9,16

*Texas W. Oaks Hosp., L.C. v. Williams*
371 S.W.3d 171 (Tex. 2012) .......................................................... 14, 15, 17

*Thomas v. Alford*
230 S.W.3d 853 (Tex. App.–Houston [14th Dist.] 2007, no pet.) ...................... 20

*Walker v. Packer*
827 S.W.2d 833 (Tex. 1992) ................................................................... 8

*Wells v. Ashmore*
202 S.W.3d 465 (Tex. App.–Amarillo 2006, no pet.) ................................. 27, 31

*In re Windisch*
138 S.W.3d 507 (Tex. App- Amarillo 2004, no pet.) ................................. 19, 21

*Wissa v. Voosen*
243 S.W.3d 165 (Tex. App.–San Antonio 2007, pet. denied) ........................... 19

STATUTES

Tex. Bus. Org. Code Ann. § 101.114 ........................................................ 10

Tex. Civ. Prac. & Rem. Code

    Section 51.014(a)(9)..................................................................3

    Section 74.001(a)(1)................................................................. 10

    Section 74.001(a)(3)................................................................. 10

    Section 74.001(a)(12)(B)(i)...................................................... 10

    Section 74.001(a)(13)............................................. 2, 3, 4, 5, 6, 7, 8

    Section 74.001(a)(23)................................................................9

    Section 74.251(a) .................................................................. 13

    Section 74.351 ..................................................................... 2, 4

    Section 74.351(a) ................................................... 3, 6, 18, 19, 24

    Section 74.351(b) ................................................................. 3,5

    Section 74.351(b)(1)............................................................... 19

    Section 74.351(l) .............................................................. 21, 25

    Section 74.351(r)(5) ............................................... 3, 6, 18, 19, 21

    Section 74.351(r)(6) .................................................. 5, 18, 21, 25

    Section 74.403 ......................................................... 3, 6, 18

Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1, sec. 13.01(d),
1995 Tex. Gen. Laws 985, 986, *repealed by* Act of June 2, 2003,
78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 .................... 24

Act of Aug. 26, 1991, 72nd Leg., R.S., ch. 901, § 46, 1991 Tex.
Gen. Laws 3192, 3203 (amended)................................................................9

Act of June 2, 2003, 78th Leg., R.S. ch. 204, §10.11(a) 2003,
Tex. Gen. Laws 847, 884 ........................................................... 25, 31

RULES

Tex. R. App. P. 9.4 ................................................................................................1

Tex. R. App. P. 38 .................................................................................................1

Tex. R. Evid. 702 .............................................................................................. 20

04-15-00029-CV

IN THE
FOURTH COURT OF APPEALS
AT SAN ANTONIO, TEXAS

---

DIAGNOSTICS RESEARCH GROUP, L.L.C. AND JOHN R. HOLCOMB, M.D.
Appellants

v.

SUSHMA VORA
Appellee

---

On Accelerated Appeal from the 407th Judicial District Court, Bexar County, Cause No. 2013-CI-00357; *Sushma Vora v. Forest Laboratories, Inc., Forest Research Institute, Inc., Ironwood Pharmaceuticals Corporation, Diagnostics Research Group, John R. Holcomb, M.D.*

---

**BRIEF OF APPELLANTS,
DIAGNOSTICS RESEARCH GROUP, L.L.C. AND JOHN R. HOLCOMB, M.D.**

---

TO THE HONORABLE JUSTICES OF THE FOURTH COURT OF APPEALS:

Now come Appellants, DIAGNOSTICS RESEARCH GROUP, L.L.C. and JOHN R. HOLCOMB, M.D., pursuant to Rules 9.4 and 38 of the Texas Rules of Appellate Procedure and the local rules of this Court, and file this, their Brief in support of their accelerated appeal. Appellants respectfully submit that the trial court's order holding that Appellee, SUSHMA VORA's suit against Diagnostics Research Group, L.L.C. is not a "health care liability claim" and denying Appellants' motion to dismiss Appellees' claims against them should be reversed and remanded, with instructions to the trial court to dismiss Appellee's claims

with prejudice to their refiling and to award Appellants reasonable attorney's fees and costs of court.

## STATEMENT OF THE CASE

This is an interlocutory appeal from the denial of a motion to dismiss a health care liability claim brought pursuant to Chapter 74 of the Texas Civil Practices & Remedies Code. Appellee, SUSHMA VORA ("Ms. Vora") filed suit on January 8, 2013, alleging a cause of action against Appellants for claimed departures from accepted standards of medical care, proximately resulting in injury to Appellee. (CR 1.) On May 8, 2013, Appellee timely served Appellants with the report of Amy Mulroy, M.D., ostensibly to comply with the expert report requirement of Section 74.351 of the Texas Civil Practices & Remedies Code. (CR 24.) On May 30, 2013, Appellants filed their objections to Dr. Mulroy's qualifications and the sufficiency of her report, and a motion to dismiss pursuant to the statute. (CR 7.) On December 30, 2014, the trial court, Hon. Larry Noll presiding, overruled the objections and denied the motion, holding that (a) the suit against Diagnostics Research Group, L.L.C. is not a "health care liability claim" as defined by Section 74.001(a)(13) of the Texas Civil Practice & Remedies Code, and (b) Dr. Mulroy's expert report was adequate to put Dr. Holcomb on notice of the health care liability claim against him. (CR 50.) Appellants perfected their interlocutory appeal on January 19, 2015, and now seek reversal of the trial court's ruling on the motion to dismiss. (CR 57-59.)

2

## STATEMENT OF JURISDICTION

This Court has jurisdiction of this interlocutory appeal pursuant to Section 51.014(a)(9), Texas Civil Practice & Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Vernon 2013). Pursuant to the statute, an interlocutory appeal may be taken from an order denying all or part of the relief sought by a motion under Section 74.351(b) of the Texas Civil Practice and Remedies Code. *Id.* Because the trial court denied Appellants' motion to dismiss, this Court has jurisdiction over this interlocutory appeal. *See Lewis v. Funderburk*, 253 S.W.3d 204, 207 (Tex. 2008).

## ISSUES PRESENTED

1. The trial court abused its discretion in holding that Appellee's claim against Diagnostics Research Group, L.L.C. is not a "health care liability" claim under Section 74.001(a)(13) of the Texas Civil Practice & Remedies Code.

2. The trial court abused its discretion in denying Appellants' motion to dismiss because Dr. Mulroy is not a qualified expert under Sections 74.351(r)(5) and 74.403 of the Texas Civil Practice & Remedies Code.

3. The trial court abused its discretion in denying Appellants' motion to dismiss because Dr. Mulroy's report is merely conclusory with regard to the necessary element of causation and therefore does not constitute a good faith effort to comply with the statutory expert report requirement of Section 74.351(a) of the Texas Civil Practice & Remedies Code.

## STATEMENT OF FACTS

This case is a health care liability claim as defined in Section 74.001(a)(13) of the Texas Civil Practice & Remedies Code, arising out of medical care performed or furnished by Appellants, DIAGNOSTICS RESEARCH GROUP, L.L.C. ("Diagnostics") and JOHN R. HOLCOMB, M.D. ("Dr. Holcomb") to

3

Appellee, SUSHMA VORA, ("Ms. Vora") in the context of Ms. Vora's participation in a pre-market study of the drug, linaclotide. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (Vernon 2013). Ms. Vora filed her Original Petition on January 8, 2013, alleging a cause of action against Appellants for negligence and gross negligence "in conducting a study of a dangerous medication and allowing Ms. Vora to receive [l]inaclotide which had serious side effects including, but not limited to, bowel obstructions, seizure and stroke" which "severely disabled her." (CR 4.) She asserted that she had never experienced bowel obstruction, seizure, or stroke before taking linaclotide, and that "the only conclusion one can reach" is that the linaclotide caused those conditions. (CR 4.)

On May 8, 2013, Appellee served Appellants with the report and curriculum vitae of Amy Mulroy, M.D., a psychiatrist, ostensibly to comply with the expert report requirement of Section 74.351 of the Texas Civil Practices & Remedies Code. (CR 24.) In it, Dr. Mulroy opined that Dr. Holcomb, as "principal investigator" of the study, breached the standard of care by allowing Ms. Vora to continue in the study after two "severe adverse events." (CR 31.) She further opined that Diagnostics, as "the studying facility," also breached the standard of care by allowing Ms. Vora to continue in the study after two "severe adverse events." (CR 31.) Dr. Mulroy's report, however, failed to satisfy the statutory elements of an "expert report" pursuant to the statute because Dr. Mulroy is not a qualified expert and her report failed to provide a fair summary of her opinions regarding the causal relationship between the Appellants' alleged failure to meet

4

applicable standards of care and the injury, harm, or damages claimed by Ms. Vora. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (Vernon 2013). Appellants timely objected to Dr. Mulroy's qualifications and the sufficiency of her report and moved to dismiss Ms. Vora's health care liability claims against them with prejudice. (CR 7.) *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (Vernon 2013). Following a hearing on Appellants' objections and motion to dismiss on March 27, 2014, the trial court entered its order of December 30, 2014, overruling the objections and denying the motion, holding that the suit against Diagnostics is not a "health care liability claim" as defined by Section 74.001(a)(13) of the Texas Civil Practice & Remedies Code, but conversely and inconsistently holding that Dr. Mulroy's expert report was adequate to put Dr. Holcomb on notice of the health care liability claim against him. (CR 50.) Appellants perfected their interlocutory appeal on January 19, 2015, and now seek reversal of the trial court's ruling on the motion to dismiss. (CR 57-59.)

<u>SUMMARY OF THE ARGUMENT</u>

The trial court abused its discretion in holding that Ms. Vora's claim against Appellant, DIAGNOSTICS RESEARCH GROUP, L.L.C. is not a "health care liability" claim under Section 74.001(a)(13) of the Texas Civil Practice & Remedies Code because Diagnostics is a physician or affiliate of a physician and Ms. Vora's claim is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care which proximately resulted in injury to a

5

claimant—specifically, treatment with the drug linaclotide as part of a pre-market study of the drug. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13).

The trial court further abused its discretion in denying Appellants' motion to dismiss the claims against Diagnostics and Dr. Holcomb because Dr. Mulroy does not have knowledge, skill, experience, training or education on the issue of the causal relationship between Dr. Holcomb's decision to prescribe linaclotide to Ms. Vora and the claimed side effects of bowel obstructions, seizure, and stroke. Dr. Mulroy is not, therefore, qualified to give an expert opinion regarding the causal relationship between the alleged breaches of the standard of care by Diagnostics or Dr. Holcomb and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(r)(5), 74.403(Vernon 2013).

Third, the trial court abused its discretion in denying Appellants' motion to dismiss because Dr. Mulroy's report is merely conclusory with regard to the necessary element of causation. Dr. Mulroy's report fails to explain how Dr. Holcomb's decision to prescribe linaclotide to Ms. Vora caused bowel obstructions, seizure, and stroke, and therefore does not constitute a good faith effort to comply with the statutory expert report requirement under § 74.351(a). Because the report is speculative and conclusory with regard to causation, the trial court necessarily had to engage in improper inferences and assume a number of facts not set forth in the report in order to "fill in the blanks" and reach its finding that the report was sufficient. In so doing, the trial court abused its discretion. This Court should reverse the trial court's order denying Appellants'

6

motion to dismiss and remand the case with instructions to the trial court to dismiss Appellee's claims with prejudice to their refiling, and to award Appellants reasonable attorney's fees and costs of court.

ARGUMENT AND AUTHORITIES

1. The trial court abused its discretion in holding that Appellee's claim against Diagnostics Research Group, L.L.C. is not a "health care liability" claim under Section 74.001(a)(13) of the Texas Civil Practice & Remedies Code.

Generally, an appellate court reviews a trial court's denial of a motion to dismiss under Section 74.351 for an abuse of discretion. *See Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 665 (Tex. 2010); *Hill County San Antonio Mgmt. Servs., Inc. v. Trejo*, 424 S.W.3d 203, 208 (Tex. App.–San Antonio 2014, pet. dism'd). Similarly, a trial court's determination of whether a physician is qualified to opine in a health care liability case is also reviewed under an abuse of discretion standard. *Larson v. Downing*, 197 S.W.3d 303, 304-05 (Tex. 2006) (per curiam); *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam); *accord Peterson Reg'l Med. Ctr. v. O'Connell*, 387 S.W.3d 889, 892 (Tex. App.–San Antonio 2012, pet. denied).

However, when our review turns on a question of law, the appellate court must apply a de novo standard of review. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011); *Trejo*, 424 S.W.3d at 208. Whether a claim is a health care liability claim involves statutory construction and is, therefore, a question of law.

7

*Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 757 (Tex. 2014); *Loasiga v. Cerda*, 379 S.W.3d 248, 254-55 (Tex. 2014). In construing a statute, the court's aim is to determine and give effect to the Legislature's intent, beginning with the plain and common meaning of the statute's words. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003); *see also Sok*, 426 S.W.3d at 757. Failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

In determining whether a claim is a health care liability claim ("HCLC"), the focus is on the underlying nature of the cause of action and the court is not bound by the pleadings. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 847 (Tex. 2005). Given the broad language of Chapter 74, the Legislature has shown its intent that the statute "have expansive application." *Sok*, 426 S.W.3d at 758. Chapter 74 defines a "health care liability claim" as:

> A cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). Pursuant to this statutory definition, there are three elements in a HCLC: (1) the defendant is a physician or health care provider; (2) the claims concern treatment, lack of treatment, or some other departure from accepted standards of medical care, health care, or safety; and (3) the defendant's act or omission proximately caused the claimant's injury

8

or death. *Sok*, 426 S.W.3d at 758; *Tex. Laurel Ridge Hosp., L.P. v. Almazan*, 374 S.W.3d 601, 606 (Tex. App.–San Antonio 2012, no pet.).

> a. *Diagnostics Research Group, L.L.C. is a "physician" or affiliate of a physician as defined in the statute.*

With regard to the first element of a health care liability claim, Section 74.001(a)(23) includes in the definition of "physician," "(A) an individual licensed to practice medicine in this state...or (E) a company formed by a group of physicians under the Texas Limited Liability Company Act (Article 1528n, Vernon's Texas Civil Statutes)." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(23) (Vernon 2013). Ms. Vora's Response to Defendants' John R. Holcomb, M.D. and Diagnostics Research Group, L.L.C.'s Objections to the Qualifications and Report of Amy Edmondson Mulroy, M.D. and Motion to Dismiss, filed March 27, 2014, asserted that her claim against Diagnostics was not a health care liability claim and Chapter 74 did not apply because (1) Diagnostics is not a health care provider or physician but rather a "study institute;" and (2) her claim did not involve treatment, but "studying an investigational medication." (CR 43.) However, Diagnostics Research Group, L.L.C. is a limited liability company formed by Charles P. Andrews, M.D., a physician, on June 3, 2003 under the former Texas Limited Liability Company Act (Article 1528n, Vernon's Texas Civil Statutes. Act of Aug. 26, 1991, 72nd Leg., R.S., ch. 901, § 46, 1991 Tex. Gen. Laws 3192, 3203 (now renumbered and codified at TEX. BUS. ORG. CODE ANN. § 101.114 (Vernon 2013)). (App. 5.)

9

Consequently, it falls under the definition of "physician" set forth in subsection (E) of the statute. Accordingly, this Court should reject the first prong of Ms. Vora's argument that Chapter 74 does not apply to her claim against Diagnostics.

Additionally, Section 74.001(a)(12)(B)(i) defines "health care provider" to include, *inter alia*, an "affiliate" of a physician. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(B)(i) (Vernon 2013). The statute defines "affiliate" as "a person who, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with a specified person, including any direct or indirect parent or subsidiary." *Id.* § 74.001(a)(1). And the statute defines "control" as "the possession of the power to direct the management and policies of the person" through ownership. *Id.* § 74.001(a)(3). In case similar to the instant one, the Supreme Court of Texas held that a skin care clinic organized as a limited liability company was the "affiliate" of the defendant-physician and therefore a "health care provider" under Section 74.001(a)(12)(B)(i) because the defendant-physician was the sole owner of the clinic with the power to direct its management, policies, and operations. *Sok*, 426 S.W.3d at 758-59. Similarly, in this case, Dr. Holcomb, as the principal investigator of the linaclotide study in question, had the power to direct the management, policies, and operations of the study done under the auspices of Diagnostics. (App. 6.) Accordingly, Diagnostics is an affiliate of a physician. *See Sok*, 426 S.W.3d at 759.

Further, it is clear from Ms. Vora's pleadings and Dr. Mulroy's report that Diagnostics is a "physician" or the affiliate of a physician under Chapter 74. No

10

substantive distinction is made between Diagnostics and Dr. Holcomb for purposes of their alleged negligence in the treatment of Ms. Vora. As set forth in Plaintiff's Original Petition, Dr. Holcomb is "the principal investigator for Diagnostics Research Group." (CR 2.) Plaintiff's Original Petition refers to Diagnostics as a "Limited Liability Corporation" doing business in Texas, but does not elaborate other than to point out that Ms. Vora participated in a pre-market study of linaclotide, "a drug...studied by...Diagnostics Research Group and Dr. Holcomb." (CR 3.) As a cause of action against Dr. Holcomb and Diagnostics, Ms. Vora's petition asserts that "Diagnostics Research Group and Dr. Holcomb were negligent in conducting a study of a dangerous medication and allowing Ms. Vora to receive [l]inaclotide which had serious side effects including, but not limited to, bowel obstructions, seizure and stroke." (CR 4.) Ms. Vora's denial of the fact that Diagnostics is physician notwithstanding her assertions in the petition raises the question of why, especially in the absence of trial setting and/or scheduling order, she filed and served Dr. Mulroy's report and curriculum vitae in the first place.

Referring to Dr. Mulroy's report, the answer to the foregoing question is clear. As Dr. Mulroy notes, there is a "standard of care owed by Dr. Holcomb [and] Diagnostics Research Group...in conducting an open label study of a pre-marked medication," and that standard was breached when Dr. Holcomb and Diagnostics allegedly failed to withdraw Ms. Vora from the study after she developed "side effects related to the study medication." (CR 31.) Dr. Mulroy's

11

report explains that in this context, there is no difference between the principal investigator or "studying facility" because "the duties owed by a party conducting such a study…are the same regardless of where the entity is located." (CR 29.) It goes on to state that the principal investigator and studying facility both have the duty "to monitor the participant [Ms. Vora] for 'severe adverse events.'" (CR 29.) The report further states that the investigator and studying facility have the duty "to be in close contact [with] and observation of patients" who have had severe adverse events between study visits, and that "Dr. Holcomb [and] Diagnostics Research Group…each had a duty to follow Ms. Vora closely following her first [severe adverse event] in January 2011." (CR 30-31.) Dr. Mulroy is entirely unable to distinguish between the duties owed by Dr. Holcomb and Diagnostics: "In my opinion, Dr. Holcomb, as principal investigator, breached the standard of care by allowing Ms. Vora to continue in the study….Diagnostics Research Group, as the studying facility, breached the standard of care by allowing Ms. Vora to continue in the study…." (CR 31.) To summarize, the alleged acts and omissions of Dr. Holcomb and Diagnostics as set forth in Ms. Vora's pleadings and Dr. Mulroy's report reinforce the notion that Dr. Holcomb and Diagnostics are one and the same as it relates to the duties owed to Ms. Vora and the claims brought by her against Appellants.

12

b. *Ms. Vora's claim against Diagnostics Research Group, L.L.C. arises out of an alleged departure from accepted standards of medical care.*

With regard to the second element of a health care liability claim—that the claim concern treatment, lack of treatment, or some other departure from accepted standards of medical care, health care, or safety—the Supreme Court of Texas has acknowledged that, given the broad language of Chapter 74 and the Legislature's intent that the statute "have expansive application," the statute "essentially creates a presumption that a claim is a HCLC if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." *Loasiga*, 379 S.W.3d at 256. The trial court in the instant case correctly found that Ms. Vora's claim against Dr. Holcomb was a health care liability claim, but without explanation found the exact same claim against Diagnostics was not. In so doing, the trial court failed to correctly follow the law and abused its discretion.

In *Diversicare*, the court held that a patient's claim that a nursing home's negligence in failing to provide adequate supervision and nursing services proximately causing her injuries from a sexual assault by another patient involved "departures from accepted standards of professional health care and safety" and therefore were health care liability claims governed by the two-year statute of limitations. *Diversicare*, 185 S.W.3d at 845; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a) (Vernon 2013). The court held that any claim that alleges a

13

departure from accepted standards of health care is an HCLC if the act or omission complained of is an inseparable or integral part of the rendition of health care. *Diversicare*, 185 S.W.3d at 848, 850.

In a subsequent decision, the Supreme Court of Texas found that the expansive application of the statute extended to a suit brought by an employee against his employer, both of whom are health care providers, alleging injuries arising out of inadequate training, supervision, risk-mitigation, and safety in a mental health hospital. *See Texas W. Oaks Hosp., L.C. v. Williams*, 371 S.W.3d 171, 174 (Tex. 2012). In *Williams*, the estate of a patient killed during an altercation with the employee brought suit against both the employee and the hospital. *Id.* The employee, a psychiatric technician, brought cross-claims against the hospital for his own injuries, alleging that the hospital was negligent in failing to provide a safe workplace and other particulars, including (a) failing to properly train him to work at the hospital, including warning him of the inherent dangers of working with patients with the conditions and tendencies that the patient possessed; (b) failing to adequately supervise hospital employees while working with such patients; (c) failing to provide adequate protocols to avoid such altercations. *Id.* at 176. When the hospital filed a motion to dismiss, Williams responded that his claims sounded in ordinary negligence. *Id.* at 176-77. The trial court denied the hospital's motion, and the Court of Appeals affirmed. *Id.*

The Supreme Court of Texas reversed and remanded the case with instructions to dismiss Williams's claims against the hospital and consider the

14

hospital's request for attorney's fees and costs. *Id.* at 193. In so doing, the court noted that the question in defining "health care liability claims" is not whether the injury in question really arose from treatment commonly understood to be some type of medical or health care, nor whether it would have been a common law negligence claim. *Id.* at 179. Rather, "the issue posed is whether the umbrella fashioned by the Legislature's promulgation of [Chapter 74] includes the cause of action brought by a claimant against physicians or health care providers." *Id.* Of central importance to the court's holding that Williams's claims alleging the hospital's failure to properly train its staff, warn of risks associated with violent psychiatric patients, provide adequate protocols and equipment to limit such risks, and provide a safe work environment were HCLCs was the court's determination that expert testimony in the health care field was necessary to support those claims:

> The dispute…is, at its core, over the appropriate standards of care owed to this mental health professional in treating and supervising a psychiatric patient at the mental hospital, what services, protocols, supervision, monitoring and equipment were necessary to satisfy the standard, and whether such specialized standards were breached….The allegedly missing or insufficient protocols and standards were for a mental patient in a mental hospital. It would blink reality to conclude that no professional mental health judgment is required to decide what those should be, and whether they were in place at the time of Williams' injury.

*Id.* at 182 (citations omitted). *See also Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) (per curiam) (holding that a plaintiff's battery claim was a health care liability claim because "[t]here may [have] be[en] reasons for providing treatment

15

without specific consent that do not breach any applicable standard of care[, and] [t]he existence or nonexistence of such reasons is necessarily the subject of expert testimony") and *Almazan*, 374 S.W.3d at 606 (holding the plaintiff's claim under the mental health patient's bill of rights under chapter 321 of Tex. Health & Safety Code was a health care liability claim for which an expert report was required, and acknowledging another consideration in determining whether a cause of action was a health care liability claim was whether proving the claim would require specialized knowledge of a medical expert).

This Honorable Court has recognized the importance of looking to whether expert medical or health care testimony is necessary to prove or refute the merits of the plaintiff's claim against a health care provider. *Lopez v. Osuna*, No. 04-14-00310-CV 2014 WL 6687317, *5 (Tex.App.—San Antonio Nov. 26, 2014 no pet. h.). In *Lopez*, the Plaintiff made allegations of DTPA violations against Lopez, an alleged midwife, for injuries to mother and child due to Lopez's alleged failure to provide midwife services to Osuna as she went into labor and delivered her child. This court reversed the trial court's denial of the defendant's motion to dismiss for the plaintiff's failure to file an expert report as required by Section 74.351 of the Texas Civil Practice and Remedies Code. This Court held that Osuna's claims were health care liability claims because, *inter alia*, to establish or refute the claims would require some sort of medical expert. *Id*. at *7. Further, the court states, "[w]ithout an expert, it is impossible to know whether an act or omission by Lopez was the proximate cause of the injuries to mother or child. Therefore,

16

because an expert is required to prove or refute her claims, we hold Osuna's claims are health care liability claims." *Id.*

Similarly, Ms. Vora's claim is that Diagnostics was negligent "in conducting a study of a dangerous medication and allowing Ms. Vora to receive [l]inaclotide which had serious side effects including, but not limited to, bowel obstructions, seizure and stroke" which "severely disabled her." The dispute is, at its core, over the appropriate standards of care owed by the principal investigator and studying facility to a patient such as Ms. Vora receiving treatment with linaclotide in the context of an "open label study" of the medicine. (CR 31.) It would blink reality to conclude that no professional medical judgment is required in conducting a study of a "dangerous medication" and deciding who should or should not participate, or why. *See Williams*, 371 S.W.3d at 182.

The Supreme Court of Texas has also held that a patient's allegations that she sustained burns to her legs during laser hair removal procedure implicated the conduct of physician and facility during patient's medical care and treatment, thus triggering application of rebuttable presumption that patient's claims were health care liability claims. *Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d at 756. The court held that expert health care testimony was needed to prove or refute the patient's claim in part because of federal regulations restricting the use of laser surgical devices, but also because the proper operation and use of such a device "requires extensive training and experience, which indicates that such matters are not within the common knowledge of laypersons." *Id.* at 762.

17

Because the plaintiff in *Sok* had not rebutted the presumption that her laser hair removal claim was a health care liability claim, her failure to serve an expert report precluded her suit. *Id.* at 762-63. The Supreme Court therefore reversed the court of appeals' judgment and remand for the trial court to dismiss the claim. *Id.* at 763. The relevant question in this case is whether it is within the common knowledge of laypersons to conduct an open label study of an investigational medicine such as linaclotide. Appellants submit it is not. This Court should therefore reverse the trial court's judgment on this point.

2. The trial court abused its discretion in denying Appellants' motion to dismiss because Dr. Mulroy is not a qualified expert under Sections 74.351(r)(5) and 74.403 of the Texas Civil Practice & Remedies Code.

Section 74.351(a) of the Texas Civil Practice and Remedies Code requires a claimant in a health care liability claim, not later than the 120th day after the date each defendant's original answer is filed, to serve on that party one or more expert reports for each physician or health care provider against whom a liability claim is asserted. § 74.351(a). The report must "provide[ ] a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objections to the sufficiency of the report not later than the later of the 21st day after the date the report is served or the 21st day

18

after the date the defendant's answer is filed, failing which all objections are waived. *Id.* § 74.351(a). A challenge to the adequacy of an expert report may be based on a claim that it fails to demonstrate the person rendering the opinion is qualified to testify as an expert. *In re Windisch,* 138 S.W.3d 507, 511 (Tex. App-Amarillo 2004, no pet.); *see Wissa v. Voosen,* 243 S.W.3d 165, 168 (Tex. App.–San Antonio 2007, pet. denied). If the trial court concludes the report does not represent an objective good faith effort to comply with the report requirement, the court must grant a motion to dismiss the claim. *Id.* § 74.351(b)(1).

With respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, Section 74.351 defines an expert as a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C) (Vernon 2013). Not every physician is automatically qualified to testify on every medical condition. *Broders,* 924 S.W.2d at 152-153; *Tenet Hosps. Ltd. v. Love,* 347 S.W.3d 743, 749-50 (Tex. App.–El Paso 2011, no pet.). A plaintiff offering medical testimony must establish that the expert is qualified to testify under Rule 702 of the Texas Rules of Evidence regarding "the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Broders,* 924 S.W.2d at 153; *Martinez-Partido v. Methodist Specialty & Transplant Hosp.,* 327 S.W.3d 274,

19

278 (Tex. App.–San Antonio 2010, no pet.); *see* TEX. R. EVID. 702.[1] The analysis

focuses on "the very matter" on which the expert is to give an opinion. *Broders*,

924 S.W.2d at 153; *Martinez-Partido*, 327 S.W.3d at 278; *Thomas v. Alford*, 230

S.W.3d 853, 857, 860 (Tex. App.–Houston [14th Dist.] 2007, no pet.) (holding

that because the doctor who submitted an expert report did not demonstrate

knowledge of cancer treatment, he was not qualified to offer an opinion that an

earlier diagnosis could have produced a better outcome for the plaintiff); *Mem'l*

*Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 762–63 (Tex.

App.–Houston [14th Dist.] 2007, no pet.) (holding that a doctor was qualified to

opine about causation because his report demonstrated direct experience with

treating decubitus ulcers, which was the condition at issue).

The expert's qualifications must appear in the expert report or curriculum

vitae and cannot be inferred. *See Olveda v. Sepulveda*, 141 S.W.3d 679, 683

(Tex. App.—San Antonio 2004, pet. denied). That is, a court may look only within

the four corners of the report and curriculum vitae to determine if the expert is

qualified. *See Farishta v. Tenet Healthsystem Hosp. Dallas, Inc.*, 224 S.W.3d

448, 450 (Tex. App.–Ft. Worth 2007, no pet.). The Court may not fill in gaps in a

report by making inferences or guessing. *Bogar v. Esparza*, 257 S.W.3d 354, 362

(Tex. App.–Austin 2008, no pet). Should the plaintiff fail to establish the

---

[1] Rule 702 states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702.

20

purported expert's qualifications to submit an expert report on the issue of causation, her report is deficient and does not comply with Section 74.351. *Collini v. Pustejovsky*, 280 S.W.3d 456, 466 (Tex. App.–Fort Worth 2009, no pet.). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l), (r)(5)-(6); *Windisch*, 138 S.W.3d at 511 (noting that a report authored by an unqualified physician cannot be adequate).

In this case, Ms. Vora had the burden of establishing that Dr. Mulroy is qualified to opine regarding accepted standards of medical care in the use of linaclotide, and that she has knowledge, skill, experience, training or education on the issue of the causal relationship between Dr. Holcomb's decision to prescribe linaclotide to Ms. Vora and the claimed side effects of bowel obstructions, seizure, and stroke. Because she cannot establish that Dr. Mulroy is so qualified, Dr. Mulroy's report is deficient.

In *Collini*, a case involving facts extremely similar to the facts of the instant case, the Court of Appeals at Fort Worth considered the qualifications of the plaintiff's purported expert by looking to her original petition to indicate the "specific factual issue she was raising in her claim," in particular the defendant-physician's ongoing prescription of the drug, Reglan. *Collini*, 280 S.W.3d at 464. The expert, Dr. Haberer, noted in his report that Reglan's manufacturer specified that the drug should not be prescribed for more than 4-12 weeks because of the risk of gastrointestinal problems, and further that tardive dyskinesia was a known complication of the drug. *Id.* The court held that, while Dr. Haberer's curriculum

21

vitae did establish "a background in pharmaceutical matters," he did not have any specific knowledge, experience, education, or training in assessing the causal relationship between the prolonged use of Reglan and tardive dyskinesia, and there was not qualified to give an expert opinion on the issue of causation. *Id.* at 465-66. Because the expert was not qualified to submit an expert report on the issue of causation, his report was deficient and did not comply with the statute. *Id.* at 466.

In the instant case, Ms. Vora's Original Petition alleges that Appellants committed negligence and gross negligence "in conducting a study of a dangerous medication and allowing Ms. Vora to receive [l]inaclotide which had serious side effects including, but not limited to, bowel obstructions, seizure and stroke" which "severely disabled her." (CR 4.) She asserts that she had never experienced bowel obstruction, seizure, or stroke before taking linaclotide, and that "the only conclusion one can reach" is that the linaclotide caused those conditions. (CR 4.) In her report, Dr. Mulroy makes no mention whatsoever of "seizure" or "stroke," but rather mentions only the symptoms of "distended abdomen and vomiting." She then asserts those conditions were proximately caused by Dr. Holcomb's and Diagnostics's alleged failure to remove Ms. Vora from the linaclotide study (and, presumably, stopping to prescribe linaclotide) not later than the second "severe adverse event," an event which Dr. Mulroy admits that Dr. Holcomb and Diagnostics were unware of. (CR 32.)

22

Dr. Mulroy's curriculum vitae establishes that she is a licensed Texas physician who is board-certified in Psychiatry and Neurology, whose practice is the

> [d]iagnosis and treatment of psychiatric conditions in adults with a focus on medication management and brief therapy interventions for the treatment of Major Depressive Disorder, Generalized Anxiety Disorder, Panic Disorder, Obsessive-Compulsive Disorder, Bipolar I and II Disorders, and Dementia Related Illness.

(CR 33.) Dr. Mulroy's curriculum vitae and report establish that she belongs to several professional organizations and has been the principal investigator for a number of clinical trials of psychiatric drugs. (CR 25-28, 34-37.) Nowhere within the four corners of Dr. Mulroy's report or curriculum vitae, however, is there any indication whatsoever that she has any specific knowledge, experience, education, or training in assessing the causal relationship between the prolonged use of linaclotide and distended abdomen and vomiting, bowel obstructions, or any other gastrointestinal conditions or diseases, let alone seizure or stroke. In fact, her report does not state that she has any experience or training regarding linaclotide or gastrointestinal conditions at all; rather, it states only generally that they are "side effects" of the drug, without any explanation of what training or experience led her to that conclusion. (CR 30.) The report does not indicate that the diagnosis of distended abdomen and vomiting resulting from prolonged use of linaclotide is a matter that is developed in various fields to the extent that any physician would be qualified to report about it.

23

Dr. Mulroy, therefore, has not demonstrated her qualifications, under the standards set forth above, to support her attempt to causally link the alleged breach of Dr. Holcomb's and Diagnostics's duty to remove Ms. Vora from the study and stop prescribing linaclotide. *Compare Collini*, 280 S.W.3d at 466. While Dr. Mulroy's report contains several statements purporting to link the use of linaclotide to distended abdomen and vomiting (e.g., "side effects related to the study medication," "a bowel condition related to the side effects of linaclotide," "Linoclotide has the risk associated with that condition"), the four corners of her report do not provide any details regarding her qualifications to make such assertions. *Compare id.* Because Dr. Mulroy is not qualified to submit an expert report on the issue of causation, her report is deficient and does not comply with the statute. *See id.* at 466. Accordingly, the trial court abused its discretion in denying Appellants' motion to dismiss.

3. The trial court abused its discretion in denying Appellants' motion to dismiss because Dr. Mulroy's report is merely conclusory with regard to the necessary element of causation and therefore does not constitute a good faith effort to comply with the statutory expert report requirement of Section 74.351(a) of the Texas Civil Practice & Remedies Code.

When considering a motion to dismiss under Section 74.351, "the issue for the trial court is whether the report represents a good faith effort to comply with the statutory definition of an expert report." *Am. Transitional Care Ctrs. of Texas, Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex. 2001) (construing Section 74.351's predecessor statute, Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1, sec. 13.01(d), 1995 Tex. Gen. Laws 985, 986, *repealed by* Act of June 2, 2003, 78th

24

Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(I). To constitute a good faith effort, the report must contain a fair summary of the expert's opinions about the applicable standard of care, the manner in which the care failed to meet that standard, and the causal relationship between that failure and the claimed injury. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 878. An expert report serves two purposes: (1) it informs the defendant of the specific conduct being questioned, and (2) it provides a basis for the trial court to conclude whether the claim has merit. *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011); *Leland v. Brandal*, 257 S.W.3d 204, 206–07 (Tex. 2008); *Palacios*, 46 S.W.3d at 879. Although the four corners of the report need not "marshal all the plaintiff's proof" or meet summary judgment proof, the report must do more than merely state the expert's conclusions about the standard of care, breach, and causation. *Bowie Mem'l*, 79 S.W.3d at 52; *Cook v. Spears*, 275 S.W.3d 577, 585 (Tex. App.–Dallas 2008, no pet.); *Hutchinson v. Montemayor*, 144 S.W.3d 614, 617 (Tex. App.–San Antonio 2004, no pet.).

There are no "magic words" required to establish causation. *Bowie Mem'l*, 79 S.W.3d at 52–53; *Hutchinson*, 144 S.W.3d at 617–18. An expert report, however, must provide a fair summary of the expert's opinions on the causal relationship of a breach from a standard of care to the harm claimed with enough specificity to allow the trial court to conclude that the plaintiff's claims have merit. *Palacios*, 46 S.W.3d at 878; *see also* § 74.351(r)(6). To qualify as a good faith

25

effort in describing that causal relationship, the report must do more than merely state conclusions; rather, it must explain the basis for the expert's causation opinions by linking the expert's conclusions to the facts. *Bowie Mem'l*, 79 S.W.3d at 52; *Peterson Reg'l*, 387 S.W.3d at 893. In more plainspoken terms, this Court explained that a report is inadequate if "it fail[s] to explain how the breach caused the injury alleged." *Jones v. King*, 255 S.W.3d 156, 160 (Tex. App. – San Antonio 2008, no pet.). Applying this standard, an expert report is insufficient when it contains only a series of repetitious or conclusory statements regarding causation. *See Bowie Mem'l*, 79 S.W.3d at 53; *Jones v. King*, 255 S.W.3d at160 (quoting *Bowie Mem'l*, 79 S.W.3d at 52) (adding that an expert must "'explain the basis of his statements to link the conclusions to the facts'"). "An expert cannot simply opine that the breach caused the injury....Instead, the expert must go further and explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Jelinek v. Casas*, 328 S.W.3d 526, 539-40 (Tex. 2010). As another Court of Appeals has noted:

> [T]o be sufficient an expert report must include more than the mere statement that a purported breach of an applicable standard of care caused a particular outcome. Rather, information explaining the link between the standard of care, its breach, and the ensuing injury must be contained within its four corners. **So, when addressing the topic of causation, an expert is required to provide some factual information describing how and why the breach resulted in the injury.** And, while this explanation need not equate a marshaling of evidence, it must be more than conclusions.

26

*Wells v. Ashmore*, 202 S.W.3d 465, 467 (Tex. App.–Amarillo 2006, no pet.) (emphasis added, citing *Rittmer v. Garza*, 65 S.W.3d 718, 723 (Tex. App.–Houston [14th Dist.] 2001, no pet.)).

This Court has addressed the necessity of establishing the causal link between the departure from the applicable standards of care and the injury, harm, or damages alleged—the "how-and-way"—in a case involving a patient who claimed the negligence worsened her condition. *Jones*, 255 S.W.3d 156. In *Jones*, the patient sued two physicians, alleging, *inter alia*, that the defendants' failure to timely diagnose and treat her meningitis resulted in additional pain and suffering. *Id.* at 158-59. The Court overturned the trial court's denial of the defendant's motion to dismiss, noting that it contained "little more than a series of repetitious conclusory statements" that, *inter alia*, the failure to timely detect and treat the meningitis for more than forty-eight hours caused it to become worse and resulted in numerous additional complications and injuries including decreased vision, diabetes insipidus, and pain. *Id.* at 159. The court held that "while it may be facially appealing to infer additional pain and suffering resulted from the alleged delay in diagnosis, the trial court is not permitted to rely on such speculation in determining the adequacy of the report." *Id.* at 160. Citing *Bowie Mem'l* and *Hutchinson*, the court went on to say that while the report clearly stated the patient suffered "extra" or "additional" pain and suffering due to the delay in diagnosis, it failed "to provide any baseline from which the trial court

27

could conclude the delay caused the results," because, as here, the expert did not explain what facts led him to his conclusions. *Id.*

In another recent opinion, this Court held that an expert report failed to adequately set forth the necessary element of causation when it stated, "Maria Cantu was under medication named Warfarin. It is medically known that this is a blood thinner. The side effects of this medication, combined with the dropping of Maria Cantu may have been fatal." *Savaseniorcare Admin. Servs., L.L.C. v. Cantu*, No. 04-14-00329-CV, 2014 WL 5352093 at *5 (Tex. App.–San Antonio October 22, 2014, no pet. h.). This Court held that statement of causation failed to explain how and why the alleged negligence—dropping Maria Cantu while transferring her to her bed, then failing to report the incident and follow protocol—caused the injury. *Id.* "The report fails to contain sufficiently specific information to demonstrate causation beyond mere conjecture." *Id.* Accordingly, this Court found that the trial court had abused its discretion in overruling the defendant's objections to the report. *Id.*

In this case, separate from and in addition to the issues regarding Dr. Mulroy's qualifications, Dr. Mulroy's report contains an insufficient explanation of the causal relationship between Dr. Holcomb's prescription of linaclotide and Ms. Vora's conditions—let alone the bowel obstructions, seizure, and stroke she alleges occurred as a result:

> ...If Dr. Holcomb had timely removed her from the study, the third severe adverse event—the May 2011 hospitalization for which Ms. Vora was removed from the study[—]would not have occurred.

28

...If Diagnostic had timely removed her from the study, the third severe adverse event—the May 2011 hospitalization for which Ms. Vora was removed from the study[—]would not have occurred....

Here, the proximate cause of the third hospitalization was the continued use of linaclotide. The third hospitalization was for a distended abdomen and vomiting, which was a known risk of the drug. Therefore it was foreseeable that the continued use of the drug would cause distended abdomen and vomiting. Ms. Vora also had already been hospitalized twice for similar injuries while taking the drug, making it foreseeable that continued use of the drug would result in distended abdomen and vomiting. But for the negligence of Dr. Holcomb [and] Diagnostics Research Group...in reasonable medical probability, Ms. Vora would not have suffered the distended abdomen and vomiting, or the associated hospitalization and pain and suffering.

(CR 31-32.) Dr. Mulroy's report contains only a series of repetitious, conclusory statements regarding causation. *Compare Jones*, 255 S.W.3d at 159. Dr. Mulroy's report addresses causation in a conclusory fashion and is therefore insufficient. *See id.* While the report describes Ms. Vora's alleged physical harm and states Dr. Mulroy's conclusion that such harm was related to linclotide use, it does not provide any medical detail as to how the linaclotide caused Ms. Vora's conditions or, more importantly, how Dr. Holcomb's specific prescriptions of linaclotide (beyond the taking of linaclotide generally) contributed to the harm. And while the supposed risk of side effects coupled with Dr. Mulroy's conclusory causation opinion (along with Ms. Vora's allegation that it is "the only conclusion one can reach") may create a reasonable inference that Dr. Holcomb's prolonged prescription of linaclotide caused Ms. Vora's conditions, the court is not permitted to rely on that inference in reviewing Dr. Mulroy's report. *See Austin Heart, P.A.*

29

*v. Webb*, 228 S.W.3d 276, 279 (Tex. App.–Austin 2007, no pet.) (noting that courts are precluded "from filling gaps in a report by drawing inferences"); *see also Castillo v. August*, 248 S.W.3d 874, 883 (Tex. App.–El Paso 2008, no pet.) (explaining that courts are not permitted to infer causation). Because Dr. Mulroy's report does not adequately address the link between Dr. Holcomb's and Diagnostics' alleged breach of the standard of care and Ms. Vora's distended abdomen and vomiting that allegedly resulted, the report is insufficient. *Compare Jones*, 255 S.W.3d at 159; *Collini*, 280 S.W.3d at 467-68.

The Court of Appeals at Texarkana held that a similar conclusory report did not represent the required good faith effort in a case in which a child's parents sued a pediatrician, emergency room physician, and hospital, alleging a failure to timely diagnose and treat bacterial meningitis. *Longino v. Crosswhite*, 183 S.W.3d 913, 915 (Tex. App.–Texarkana 2006, no pet.). There, the court considered the sufficiency of the plaintiffs' expert report, which stated as follows:

> In consultation with Dr. James Longino, Dr. Cameron ordered a blood culture, basic blood tests, IV fluids, IV Claforan antibiotics (1st given around 12 mid-night), and admitted Ashton to the hospital with a presumptive diagnosis of dehydration and enteritis. During this encounter, a prudent physician would have at least become alarmed by Ashton's symptoms, would have promptly performed a diagnostic lumbar puncture, and would have aggressively initiated treatment with the appropriate combination of antibiotics....

> Dr. Cameron['s] and Dr. Longino's care of Ashton Crosswhite fell below the standard of care for the emergency diagnosis and treatment of bacterial meningitis in a child. Their failure to either recognize or acknowledge the obvious symptoms of fever, altered mental status, and neck pain; to perform a timely diagnostic lumbar

30

puncture; and to aggressively treat Ashton's bacterial meningitis with an appropriate combination of antibiotics led to an unnecessary exacerbation of his symptoms. Subsequently, this prolonged symptomatology was a cause of Ashton's significant and permanent neurological injuries.

*Id.* at 917. Citing *Bowie Mem'l*, the Court of Appeals held this report was insufficient, noting it "only states that the delay in diagnosis caused significant and permanent neurological injuries. An expert report must show causation beyond mere conjecture. The report...contains mere conclusions concerning causation." *Id.* at 918 (citation omitted). Like the insufficient report at issue in *Longino*, Dr. Mulroy's report in the instant case simply provides no how-and-why link between Dr. Holcomb's prescription of linaclotide to Ms. Vora and Dr. Mulroy's conclusions regarding the cause of Ms. Vora's conditions, beyond the mere assertion that distended abdomen and vomiting are "a known risk of the drug" and had Ms. Vora been removed from the study (and presumably, stopped taking linaclotide), "the third severe adverse event" would not have occurred. *See id; see also Wells*, 202 S.W.3d at 467. Accordingly, the trial court abused its discretion in denying Appellants' motion to dismiss.

When the legislature enacted Chapter 74, it was concerned with the increasing number of health care liability claims and the cost of such claims for defendant physicians, health care practitioners, and health care institutions. *See* Act of June 2, 2003, 78th Leg., R.S. ch. 204, §10.11(a) 2003, TEX. GEN. LAWS 847, 884. The expert report requirement reflects the Legislature's considered finding "that the cost of conducting plenary trials of claims as to which no

31

supporting expert could be found was affecting the availability and affordability of health care...." *In Re McAllen Med. Ctr.*, 275 S.W.3d 458, 465 (Tex. 2008). Plaintiffs asserting health care claims have long been required to support their claim at trial with supporting expert testimony, but they must now support such claims with expert reports shortly after filing. *See id.* at 460. However, as the Supreme Court has noted, "This expedited deadline will of course never accomplish the purposes of the Texas Legislature unless it is enforced by Texas courts." *Id.* at 460.

## CONCLUSION

The trial court abused its discretion in holding that Ms. Vora's claim against Appellant, DIAGNOSTICS RESEARCH GROUP, L.L.C. is not a "health care liability" because Diagnostics is a physician or affiliate of a physician and Ms. Vora's claim is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care which proximately resulted in injury to a claimant. The trial court further abused its discretion in denying Appellants' motion to dismiss the claims against Diagnostics and Dr. Holcomb because Dr. Mulroy is not qualified to give an expert opinion regarding whether Diagnostics or Dr. Holcomb departed from accepted standards of care or the causal relationship between those alleged departures and the injury, harm, or damages claimed. Third, the trial court abused its discretion in denying Appellants' motion to dismiss because Dr. Mulroy's report is merely conclusory with regard to the

32

necessary element of causation and does not constitute a good faith effort to comply with the statutory expert report requirement.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellants pray this Honorable Court reverse the trial court's order denying Appellants' motion to dismiss and remand the case with instructions to the trial court to dismiss Appellee's claims with prejudice to their refiling, and to award Appellants reasonable attorney's fees and costs of court, as well as any and all other and further relief to which Appellants may be justly entitled.

Respectfully submitted,

_Christina Herrera_

BRETT B. ROWE
State Bar No. 17331750
MATTHEW M. EDWARDS
State Bar No. 24032034
CHRISTINA HERRERA
State Bar No. 24043726
EVANS ROWE & HOLBROOK, P.C.
10101 Reunion Place, Suite 900
San Antonio, Texas 78216
Direct Line: (210) 384-3271
Facsimile:   (210) 340-6664
Email: bbrowe@evans-rowe.com
ATTORNEYS FOR APPELLANTS,
DIAGNOSTICS RESEARCH GROUP,
L.L.C. AND JOHN R. HOLCOMB, M.D.

## CERTIFICATE OF SERVICE

I certify that a copy of Appellants' Brief was served on the parties listed below through counsel of record, by First Class U.S. mail on the 16th day of February, 2015.

Christopher J. Deeves
THE LAW OFFICE OF CHRISTOPHER DEEVES, P.C.
1370 Pantheon Way, Suite 110
San Antonio, Texas 78232
Email: chrisdeeves@att.net

Beth S. Janicek
JANICEK LAW FIRM, P.C.
1100 NE Loop 410, Suite 550
San Antonio, TX 78209
Email: beth@janiceklaw.com

      COUNSEL FOR APPELLEE,
      SUSHMA VORA

Harvey Ferguson, Jr.
Benjamin C. Nichols
HOBLIT FERGUSON DARLING, L.L.P.
Bank of America Plaza
300 Convent Street, Suite 140
San Antonio, Texas 78250
Email: hferguson@hfdlaw.com

Joseph P. Thomas
Jeffrey D. Geoppinger
ULMER & BERNE, L.L.P.
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202-2409
jthomas@ulmer.com

      COUNSEL FOR INTERESTED PARTIES,
      FOREST LABORATORIES, INC. AND
      FOREST RESEARCH INSTITUTE, INC.

_____
CHRISTINA HERRERA

34

04-15-00029-CV

IN THE
FOURTH COURT OF APPEALS
AT SAN ANTONIO, TEXAS

---

DIAGNOSTICS RESEARCH GROUP AND JOHN R. HOLCOMB, M.D.
Appellants

v.

SUSHMA VORA
Appellee

---

On Accelerated Appeal from the 407th Judicial District Court, Bexar County,
Cause No. 2013-CI-00357; *Sushma Vora v. Forest Laboratories, Inc., Forest
Research Institute, Inc., Ironwood Pharmaceuticals Corporation, Diagnostics
Research Group, John R. Holcomb, M.D.*

---

## APPELLANTS' APPENDIX

---

## LIST OF DOCUMENTS

1. Plaintiff's Original Petition..................................................................Tab A

2. Original Answer and Jury Demand of Defendants, John
   R. Holcomb, M.D. and Diagnostics Research Group,
   L.L.C. .........................................................................................Tab B

3. Defendants, John R. Holcomb, M.D. and Diagnostic
   Research Group, L.L.C.'s Objections to the
   Qualifications and Report of Amy Edmondson
   Mulroy, M.D. and Motion to Dismiss.............................................Tab C

4. Plaintiff, Response to Defendants' John R. Holcomb,
   M.D. and Diagnostics Research Group, L.L.C.'s
   Objections to the Qualifications and Report of Amy
   Edmondson Mulroy, M.D. and Motion to Dismiss ...........................Tab D

5. Affidavit of Charles P. Andrews, M.D. and Diagnostics
   Research Group, L.L.C. – Articles of Incorporation ...........................Tab E

35

6. Affidavit of John R. Holcomb, M.D. ..................................................... Tab F

TAB"A"



**2013-CI-00357**
407TH JUDICIAL DISTRICT COURT
SUSHMA VORA  VS FOREST LABORATORIES INC
DATE FILED: 01/08/2013

Filed
13 January 8 P6:07
Donna Kay McKinney
District Clerk
Bexar District
Accepted by:
Annabelle Kung

| | | |
|---|---|---|
| SUSHMA VORA | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | ____ JUDICIAL DISTRICT |
| | § | |
| FOREST LABORATORIES, INC, | § | BEXAR COUNTY, TEXAS |
| FOREST RESEARCH INSTITUTE, | § | |
| INC., IRONWOOD | § | |
| PHARMACEUTICALS | § | |
| CORPORATION, | § | |
| DIAGNOSTICS RESEARCH GROUP, | § | |
| AND JOHN R. HOLCOMB, M.D. | § | |



### PLAINTIFF'S ORIGINAL PETITION

COMES NOW, PLAINTIFF SUSHMA VORA, complaining of DEFENDANTS FOREST LABORATORIES, INC., FOREST RESEACH INSTITUTE, INC., IRONWOOD PHARMACEUTICALS CORPORATION, DIAGNOSTICS RESEARCH GROUP, LLC AND JOHN R. HOLCOMB, M.D., AND WOULD SHOW THE COURT AS FOLLOWS:

#### PARTIES

Plaintiff Sushma Vora ("Ms. Vora") is a resident of San Antonio, Bexar County, Texas.

Defendant Forest Laboratories, Inc. ("Forest Laboratories") is a Delaware corporation with its principal place of business in New York. It has conducted business in the State of Texas, but does not maintain a registered agent for service in the State of Texas. It may be served with process through the Secretary of State for the State of Texas at its principal place of business, 909 Third Avenue, New York, New York 10022-4731.

Defendant Forest Research Institute, Inc. ("Forest Research Institute") is a subsidiary of Forest Laboratories, Inc. It has conducted business in the State of Texas, but does not maintain a registered agent for service in the State of Texas. It may be served with process through the

Secretary of State for the State of Texas at its principal place of business, 909 Third Avenue, New York, New York 10022-4731.

Defendant Ironwood Pharmaceuticals Corporation ("Ironwood") is a Delaware corporation with its principal place of business at 301 Binney Street, Cambridge, Massachusetts 02142. It has conducted business in the State of Texas and may be served with process through its registered agent, CT Corporation System, 350 North St. Paul St., Suite 2900, Dallas, Texas 75201-4234.

Defendant Diagnostics Research Group, LLC ("Diagnostics Research Group") is a Texas Limited Liability Corporation doing business in the State of Texas. It may be served with process through its registered agent, Charles P. Andrews, at his designated address for service, 4410 Medical Drive, Suite 360, San Antonio, Texas 78229.

Defendant John R. Holcomb, M.D. is a the principal investigator for Diagnostics Research Group and a resident of the State of Texas and he may be served with process at the office of Diagnostics Research Group, 4410 Medical Drive, Suite 360, San Antonio, Texas 78229.

### DISCOVERY LEVEL

Discovery in this case is to be conducted under level 3 of rule 190 of the Texas Rules of Civil Procedure.

### JURISDICTION AND VENUE

All claims at issue arose in the State of Texas such that jurisdiction is proper in this state. Venue is proper in Bexar County, Texas as the conduct leading to Ms. Vora's injuries and her injuries themselves occurred in Bexar County, Texas.

2



## BACKGROUND FACTS APPLICABLE TO ALL CAUSES OF ACTION

Sushma Vora was a highly successful individual who had maintained a lucrative career prior to her participation in a pre-market study of Linaclotide (which was not available on the market at the time Ms. Vora received it but is now marketed as "Linzess"), a drug developed by Ironwood, marketed by Forest Laboratories, and studied by Forest Research Institute, Diagnostics Research Group and Dr. Holcomb. She was valedictorian of her high school class, had great success in her career and enjoyed an outstanding reputation as an exemplary employee.

While participating in the study of Linaclotide, Ms. Vora was severely injured as a result of the medication. Ms. Vora was repeatedly hospitalized and ultimately suffered debilitating seizures and strokes that have rendered her a shell of her prior self. She has suffered extensive memory loss, can no longer be employed in the type of work to which she dedicated her career, and requires daily care and assistance with routine activities.

On or about January 11, 2011, Ms. Vora first experienced the horrific effects of Linaclotide. She suffered a severe bowel obstruction which resulted in injury to her, unbearable pain, and ultimately admission into the intensive care unit.

In March of 2011, Ms. Vora experienced another bowel obstruction, causing serious injury to her, including great pain and suffering.

In May of 2011, Ms. Vora was hospitalized for a third time as a result of Linaclotide resulting from vomiting and distended abdomen.

Finally, Ms. Vora suffered seizures and strokes as a result of Linaclotide, one of which was in

3

July 2011 and one of which was a "silent" stroke sometime prior. These seizures and strokes severely disabled her.

Ms. Vora had never experienced any similar medical conditions prior to participating in the study of Linaclotide. She had never been hospitalized prior to taking Linaclotide and was in exemplary health prior to taking Linaclotide. The only conclusion one can reach is that Ms. Vora's hospitalizations and injuries arose from her use of Linaclotide—a drug known to have potential serious consequences as it is not made available to persons under the age of eighteen.

CAUSES OF ACTION

As a result of the conduct described above, Ms. Vora has been seriously injured. She asserts causes of action for negligence against all Defendants. The negligence of these Defendants was such that it caused injury to Ms. Vora. Specifically, Forest Laboratories and Ironwood were negligent by making available Linaclotide to persons such as Ms. Vora, given its serious side effects including, but not limited, to bowel obstruction, seizure and stroke. Forest Research Institute, Diagnostics Research Group and Dr. John Holcomb were negligent in conducting a study of a dangerous medication and allowing Ms. Vora to receive Linaclotide which had serious side effects including, but not limited to, bowel obstructions, seizure and stroke.

Against Forest Laboratories and Ironwood, Ms. Vora asserts claims for strict product liability claims including, but not limited to:

- Design defect in that the product was designed in such a way to cause serious injuries to those who took it, including those suffered by Ms. Vora and no safer alternative design was available; and

4



• Marketing defect in that the product was made available to persons like Ms. Vora without warning participants of the serious side effects of Linaclotide.

Ms. Vora further claims that the conduct of each Defendant was grossly negligent and/or malicious, entitling Ms. Vora to recover exemplary damages as provided by law.

## DAMAGES

As a result of the conduct of the Defendants, individually and jointly, Ms. Vora has suffered significantly injuries for which she seeks recovery including:

o    medical care and expenses incurred in the past;

o    future medical care and related expenses;

o    lost wages and loss of earning capacity sustained in the past;

o    loss of future wages and earning capacity;

o    pain and suffering sustained in the past;

o    pain and suffering that will occur in the future;

o    mental anguish sustained in the past;

o    mental anguish that will occur in the future; and

o    the right to exemplary damages

Ms. Vora is entitled to this compensation, as well as pre-judgment and post-judgment interest as provided by law.

## JURY DEMAND

Ms. Vora requests a trial by jury and renders the jury fee with this petition



## PRAYER

Plaintiff prays that citation and notice issue as required by law and that Defendants appear and respond to the allegations made. Plaintiff prays that the Court grant relief in accordance with the allegations of this Petition, and for all other relief to which Plaintiff is entitled to recover under the law.

Respectfully submitted,

THE LAW OFFICE OF
CHRISTOPHER DEEVES, P.C.
1370 Pantheon Way
Suite 110
San Antonio, TX 78232
Tel: (210) 445-8807
Fax: (210) 501-0915

By: __/s/ Christopher J. Deeves__
　　Christopher J. Deeves
　　State Bar No. 00790575
　　Attorney for Plaintiff,
　　Sushma Vora

6

TAB "B"

CAUSE NO. 2013-CI-00357

| | | |
|---|---|---|
| SUSHMA VORA | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| FOREST LABORATORIES, INC, | § | 487TH JUDICIAL DISTRICT |
| FOREST RESEARCH INSTITUTE, | § | |
| INC., IRONWOOD | § | |
| PHARMACEUTICALS | § | |
| CORPORATION, | § | |
| DIAGNOSTIC RESEARCH GROUP, | § | |
| AND JOHN R. HOLCOMB, M.D. | § | BEXAR COUNTY, TEXAS |

## ORIGINAL ANSWER AND JURY DEMAND OF DEFENDANT, JOHN R. HOLCOMB, M.D. and DIAGNOSTIC RESEARCH GROUP, L.L.C.

TO THE HONORABLE JUDGE OF SAID COURT:

Now Comes John R. Holcomb, M.D. and DIAGNOSTIC RESEARCH GROUP, L.L. C. Defendants herein, and respectfully file this, their Original Answer to Plaintiff's Original Petition.

I.

Subject to written stipulations, admissions, or pleadings which these Defendants may hereinafter make and file in this cause, these Defendants generally deny the allegations contained in Plaintiff's Original Petition, pursuant to Texas Rule of Civil Procedure 92, and demand strict proof thereof to which they are entitled under the laws of this state and its constitution.

II.

While denying that Plaintiff should recover money damages from these Defendants, Defendants state in the unlikely event that any such recovery is had, such recovery is limited in accordance with Chapter 74 of the Texas Civil Practice and Remedies Code or

other statutes of this state restricting the amount of recovery in this cause. This includes but is not limited to the limitation on non-economic damages (CPRC 74.301), the limitation on damages in wrongful death and survival actions (CPRC 74.303), and payment of future losses (CPRC 74.501 – 74.507).

## III.

Again, denying that Plaintiff should recover money damages from these Defendants, Defendants state that in the unlikely event that any such recovery is had, such recovery of exemplary damages is limited in accordance with CPRC 74.301 and 74.303, as well as CPRC Chapter 41. Such recovery is also limited pursuant to the Excessive fines clause, Equal Protection clause, and Due Process clause of the 8th and 14th amendments to the U.S. Constitution.

## IV.

For the court only since this is a matter of law, this Defendants hereby reserve the statutory right to contribution or credit with respect to any other persons or organizations which are or may be made parties to this case or any settling person pursuant to Chapters 32 and 33 of the Texas Civil Practice and Remedies Code. Defendants specifically reserve the right to submit issues to the jury inquiring of the alleged negligence or alleged wrongdoing of all past, current, or future parties to this case and/or settling parties. If Plaintiff dismisses a party, these Defendants reserve the right to seek leave to designate the dismissed party as a responsible third party pursuant to CPRC 33.004. If Plaintiff dismisses the party within 60 days of trial, Defendants will contend that good cause exists to allow this request. Defendants would then affirmatively plead that the settling parties were legally responsible for Plaintiff's damages. Defendants reserve the right to elect a

dollar-for-dollar credit for any settlement monies, or other consideration paid to or for the benefit of any Plaintiff, or, alternatively, for such percentage or dollar credits as provided by statute and/or the common law.

## V.

Defendants specially except to Plaintiff's petition, pursuant to CPRC 74.053, in that the health care liability claim alleged does not specify an amount of money claimed as damages and is not within the Court's jurisdiction. Plaintiff is required to inform the Court and Defendant in writing of the total dollar amount claimed.

## VI.

Defendants request that the Court order a Level III discovery control plan tailored to the circumstances of this case pursuant to Rule 190.4. Complying with the general Level II deadlines are impossible given the requirements of CPRC Chapter 74 regarding Defendants' ability to do early discovery. This is a complicated medical malpractice action that will require depositions of treating and expert physicians both in and outside the county. A Level III discovery control plan is needed to allow the case to proceed orderly toward trial.

## VII.

Defendants hereby demand a trial by jury and tender the fee contemporaneously with this Answer.

WHEREFORE, PREMISES CONSIDERED, these Defendants respectfully requests that upon final trial or hearing hereof, that Plaintiff take nothing by reason of this

lawsuit and for such other relief, at law or in equity, to which this Defendant shows himself justly entitled.

Respectfully submitted,

GEORGE F. "Rick" EVANS, JR.
State Bar No. 06717550
(210) 340-6555
EVANS & ROWE
A Professional Corporation
10101 Reunion Place, Suite 900
San Antonio, Texas 78216
FAX: (210) 340-6664
**ATTORNEYS FOR DEFENDANT**
**JOHN R. HOLCOMB, M.D. and**
**DIAGNOSTIC RESEARCH GROUP, L.L.C.**

## CERTIFICATE OF SERVICE

I certify that on the 24th day of January, 2013, a true and correct copy of the foregoing pleading has been forwarded to all counsel of record herein, as follows:

Christopher J. Deeves
THE LAW OFFICE OF CHRISTOPHER DEEVES, P.C.
1370 Pantheon Way
Suite 110
San Antonio, TX 78232
(210)501-0915 - Facsimile

GEORGE F. "Rick" EVANS, JR.

TAB"C"

Filed
13 May 30 P4:09
Donna Kay McKinney
District Clerk
Bexar District
Accepted by:
Deborah Garay

CAUSE NO. 2013-CI-00357

| | | |
|---|---|---|
| SUSHMA VORA | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| FOREST LABORATORIES, INC, | § | 407TH JUDICIAL DISTRICT |
| FOREST RESEARCH INSTITUTE, | § | |
| INC., IRONWOOD | § | |
| PHARMACEUTICALS | § | |
| CORPORATION, | § | |
| DIAGNOSTIC RESEARCH GROUP, | § | |
| AND JOHN R. HOLCOMB, M.D. | § | BEXAR COUNTY, TEXAS |

## DEFENDANTS, JOHN R. HOLCOMB, M.D. and DIAGNOSTIC RESEARCH GROUP, L.L.C.'s OBJECTIONS TO THE QUALIFICATIONS AND REPORT OF AMY EDMONDSON MULROY, M.D. AND MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME John R. Holcomb, M.D. and Diagnostic Research Group, L.L.C., Defendants in the above-styled and numbered cause (hereinafter, collectively referred to as "Dr. Holcomb and DRG"), and respectfully file these their Objections to the Qualifications and Report of Amy Edmondson Mulroy, M.D. and Motion to Dismiss pursuant to Section 74.351 of the TEXAS CIVIL PRACTICES & REMEDIES CODE and in support thereof would respectfully show the Court as follows:

## I.
## NATURE OF THE SUIT

Plaintiff Sushma Vora brought this personal injury suit in state court alleging negligence and gross negligence against Dr. Holcomb and DRG and strict product liability claims against all other defendants. All claims arise out of Plaintiff's participation in a pre-market study of the drug Linaclotide. Therefore, the case against Dr. Holcomb and DRG specifically constitutes a health care liability claim as that term is defined under Texas law.

1

Defendants Forest Laboratories, Inc. and Forest Research Institute, Inc. removed the case to federal court. Plaintiff filed a Motion to Remand on March 11, 2013 which was ruled upon as this motion was being filed in federal court. The Honorable United States District Judge Harry Hudspeth granted Plaintiff's Motion to Remand. See Order, a true and correct copy of which is attached and incorporated herein as Exhibit A.

Because of the possibility that the case could be remanded to state court, Plaintiff timely filed her statutory 120-day report on May 8, 2013, arguably in an effort to comply with the provisions of Section 74.351 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE. See Notice of Filing 120 Day Report, a true and correct copy of which is attached and incorporated herein as Exhibit B.

Plaintiff's Original Petition states she is asserting a cause of action for negligence against all defendants. She contends Dr. Holcomb and DRG were negligent in conducting the study and allowing her to receive the drug. She claims the drug caused seizures and strokes which have disabled her permanently.

## II.
## OBJECTIONS TO QUALIFICATIONS AND EXPERT REPORT OF DR. AMY MULROY

On May 8, 2013, Plaintiff served Dr. Holcomb and DRG with the report and curriculum vitae of Amy Edmondson Mulroy, M.D. Exhibit B. Dr. Mulroy fails to satisfy the qualifications of an expert under Section 74.351(c)(5)(A) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE. Moreover, her report fails to satisfy the statutory elements of an "expert report" under Section 74.351 (r)(6) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE. Pursuant to the provisions of Section 74.351, Dr. Holcomb and DRG do hereby object to the qualifications of Dr. Mulroy and the sufficiency of her report and move to dismiss Plaintiff's health care liability claim against them with prejudice, and for an award of reasonable attorney's fees and costs of court.

2

## III.
## ARGUMENT AND AUTHORITIES ON OBJECTIONS

A.  **Chapter 74 requires expert reports to be served 120-days following filing of Plaintiff's Petition, under Texas law but not federal law.**

Section 74.351 requires the claimant, not later than the 120th day after the date the claim was filed, to serve on each party expert reports for each physician or healthcare provider against whom a liability claim is asserted. TEX.CIV.PRAC. & REM. CODE § 74.351 (a).

Each defendant physician whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report or the qualifications of the purported expert not later than the 21st day after the date it was served, failing which all objections are waived. TEX.CIV.PRAC. & REM. CODE § 74.351 (a).

B.  **Dr. Mulroy is unqualified to render an opinion.**

Pursuant to Section 74.351 (c)(5)(A), an expert means a physician qualified to testify under the requirements of Section 74.401(a), which in turn states:

> A person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care **only** if the person is a physician who:
> 1.  Is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
> 2.  Has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
> 3.  Is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

TEX.CIV.PRAC. & REM. CODE § 74.351 (c)(5)(A). (emphasis added).

The statute further sets out the framework for determining whether or not a witness is qualified by stating the Court shall consider whether the witness is board certified or has other substantial training or experience in an area of medical practice **relevant to the claim** and is

3

actively practicing medicine in rendering medical care services **relevant to the claim**. TEX.CIV.PRAC. & REM. CODE § 74.401 (c). (emphasis added).

There are additional qualifications for physicians who provide opinions as to causation and not simply standard of care. According to the statute, the person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standard of care and the damages claimed **only** if the person is a physician and is otherwise qualified to render opinions on that causal relationship under the rules of evidence. TEX.CIV.PRAC. & REM. CODE §§ 74.351(r)(5)(C), 74.403 (a). (emphasis added). The proponent of the opinion must also show that the opinion is reliable. *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996).

The Texas Supreme Court has recognized that not every doctor is qualified to render an opinion about every aspect of medicine or medical science. *In re McAllen Med. Ctr., Inc.* 275 S.W.3d 458, 463 (Tex. 2008); *Broders*, 924 S.W.2d at 152. "Given the increasingly specialized and technical nature of medicine, there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question." *Id.*

In this case, Dr. Mulroy's report and curriculum vitae clearly demonstrate she is unqualified to render either standard of care or causation opinions against Dr. Holcomb and DRG. Exhibit B. Her experience is limited solely and exclusively to psychiatry. *Id.* Her residency was in psychiatry and she is board certified in psychiatry. *Id.* at page 1 of 9. She has only acted as an investigator in drug studies of psychiatric medications. *Id.* at page 2-5 of 9. She has no experience in diagnosing or treating internal medical conditions of any kind. She does not demonstrate that she has any experience to deal with patients suffering from irritable bowel syndrome. She has never participated in a study regarding any gastrointestinal drug. Yet, the statute specifically requires she

4

have knowledge of the standard of care for the diagnosis, care, and treatment of the condition involved in this claim, not the milieu of the treatment. She does not. The statute says she must be actively practicing medicine in rendering medical services relevant to the claim. She does not. Therefore, she cannot opine about the standard of care for a physician treating a patient with irritable bowel syndrome with study medications.

For similar reasons, she is unqualified to give any causation opinions in this case. She has no experience with the condition for which Plaintiff was being treated or the medication with which Plaintiff was being treated. Her own report reveals her lack of knowledge on causation as it only refers to abdominal distension and vomiting – there is no mention of seizures and/or stroke. She fails to demonstrate how and in what manner she is familiar with Linaclotide and its side effects, if any. She fails to demonstrate how and in what manner she is familiar with irritable bowel syndrome, seizures, and stroke, or their etiology and sequelae. She has no experience to be able to link Plaintiff's symptoms with the drug Plaintiff was taking.

An expert report concerning causation in a health care liability claim authored by a person who is not qualified to testify as to causation cannot constitute an adequate report. *Collini v. Pustejovsky*, 280 S.W.3d 456, 462 (Tex. App. – Fort Worth 2009, no pet.). In such case, the trial court has no discretion and the case must be dismissed. *Id.* Because she is unqualified to render either standard of care or causation opinions in this case, Dr. Holcomb and DRG's objections must be sustained, her report must be stricken, and the cause of action against Dr. Holcomb and DRG must be dismissed with an award of attorney's fees and costs.

## C. Dr. Mulroy's report is insufficient.

A motion to dismiss under Section 74.351 is properly granted "if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the

5

definition of an expert report." *Id.* at § 74.351(l). In order to represent a "good faith" report, the expert "must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001) (construing section 74.351's predecessor statute, Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1, sec. 13.01(d), 1995 Tex. Gen. Laws 985, 986, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884). In determining whether the report constitutes a "good faith effort," the court may look only within the four corners of the report. *Palacios*, 46 S.W.3d at 878. The report is not required to marshal all of the plaintiff's proof, but it must include the expert's opinions on each of the necessary elements. *Id.*

According to Section 74.351 (r)(6), a report must consist of a fair summary of the expert's opinions regarding the applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standard of care, and the causal relationship between that failure and the damages claimed. TEX.CIV.PRAC. & REM. CODE § 74.351 (r)(6).

When reviewing a report for sufficiency, inferences are not permitted. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52-53 (Tex. 2002); *Palacios*, 46 S.W.3d at 878. Rather, the report must contain specific information sufficient to establish the necessary elements, including causation, beyond mere speculation and conjecture. *Wright*, 79 S.W.3d at 52. If there is an analytical gap between the expert's conclusion and the facts, the expert's opinion is defective. *See Wright*, 79 S.W.3d at 53.

6

Again, a report may not merely state conclusions; an expert must explain the bases of the statements made regarding causation and link her conclusions to the facts. *See Wright,* 79 S.W.3d at 52.

Dr. Mulroy's report fails to provide the required statutory elements. She fails to identify the standard of care for treating a patient with irritable bowel syndrome with Linaclotide. She fails to detail how the drug or any of Dr. Holcomb and DRG's actions caused Plaintiff's alleged injuries. Instead, her report is filled with conclusion after conclusion built upon assumption after assumption on causation. It is the very "mere conjecture" prohibited by Texas law.

Her report is similarly deficient with regard to the specific standards of care which Dr. Holcomb and DRG should have met and in what way the standards were breached. Again, there is no *how* and *why.*

Moreover, Dr. Mulroy's report is insufficient when one considers the live pleadings on file in this matter. Plaintiff's Original Petition, filed in Texas state court, refers to a series of allegedly "debilitating seizures and strokes which have rendered her a shell of her prior self." Exhibit B. However, seizures and strokes are never mentioned in Dr. Mulroy's report. Instead, she focuses on Plaintiff's "distended abdomen and vomiting." This is insufficient to satisfy the statute as to the standards of care, any alleged breach of the standard of care, and any causation of the specific conditions of which Plaintiff complains in her current live pleading. Therefore, the report is inadequate.

Another of Dr. Holcomb and DRG's objections is that the conclusory nature of Dr. Mulroy's opinions fails to satisfy the requirements of Chapter 74 and thus her report constitutes no report. One of the considerations of whether a report constitutes no report is where the deficiencies are **readily curable**. *Scoresby v. Santillan,* 346 S.W.3d 546, 557 (Tex. 2011). *Id.* (emphasis

7

added). In the present case, Dr. Mulroy's lack of knowledge of the standard of care and causation is obvious and incurable. Therefore, the report constitutes no report at all. Accordingly, this Court should sustain Dr. Holcomb and DRG's objections, grant this motion, dismiss all causes of action against them and award attorney's fees and costs.

## IV.
## MOTION TO DISMISS

If, as to a defendant physician, an expert report has not been served within the appropriate time period, the Court, on motion of the affected physician, shall enter a motion awarding the physician reasonable attorney's fees and costs of court and dismiss the claim against the physician with prejudice. TEX.CIV.PRAC. & REM. CODE §74.351(b).

Having demonstrated Dr. Mulroy is unqualified to opine against Dr. Holcomb and/or DRG as to either standard of care or causation, and having further demonstrated that her conclusory report is lacking in the requisite opinions and supporting facts on standard of care, breaches thereto, and causation, Dr. Holcomb and DRG moves the court to dismiss all claims against them with prejudice and award them reasonable attorney's fees and costs of court.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants John R. Holcomb, M.D. and Diagnostic Research Group, L.L.C. pray the Court sustain their objections, grant this motion and dismiss all causes of action set forth in Plaintiff's Original Petition against them, with prejudice. Defendants John R. Holcomb, M.D. and Diagnostic Research Group, L.L.C. also pray for such other and further relief to which they may find themselves justly entitled.

8

Respectfully submitted,


/s/ Laura F. Macom
GEORGE F. "Rick" EVANS, JR.
State Bar No. 06717550
LAURA F. MACOM
State Bar No. 24002512
EVANS & ROWE, P.C.
10101 Reunion Place Blvd., Suite 900
San Antonio, Texas 78216
Telephone: (210) 340-6555
Telecopier: (210) 340-6664


## CERTIFICATE OF SERVICE/ NOTICE OF ELECTRONIC FILING


I hereby certify that on the 30th day of May, 2013, I electronically filed the foregoing with the clerk of the court using the casefileexpress system which will send notification of such filing to the following as well as by facsimile, pursuant to the Texas Rules of Civil Procedure:

Christopher J. Deeves
THE LAW OFFICE OF CHRISTOPHER DEEVES, P.C.
1370 Pantheon Way
Suite 110
San Antonio, TX 78232
ATTORNEY FOR PLAINTIFF
SUSHMA VORA

Harvey Ferguson, Jr.
Benjamin C. Nichols
HOBLIT FERGUSON DARLING, L.L.P.
Bank of America Plaza
300 Convent Street, Suite 140
San Antonio, Texas 78250
ATTORNEYS FOR DEFENDANTS
FOREST LABORATORIES, INC. AND
FOREST RESEARCH INSTITUTE, INC.

Joseph P. Thomas
Jeffrey D. Geoppinger
ULMER & BERNE, L.L.P.
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202-2409

ATTORNEYS FOR DEFENDANTS
FOREST LABORATORIES, INC. AND
FOREST RESEARCH INSTITUTE, INC.

*/s/ Laura F. Macom*
GEORGE F. "Rick" EVANS, JR.
LAURA F. MACOM

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| SUSHMA VORA | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | NO. SA-13-CA-097 |
| | § | |
| FOREST LABORATORIES, INC., | § | |
| et al. | § | |
| | § | |
| Defendants | § | |
| | § | |

## ORDER OF REMAND

On January 8, 2013, Plaintiff filed this civil action for damages in the 407th District Court of Bexar County, Texas. On February 12, 2013, Defendants Forest Laboratories, Inc. and Forest Research Institute, Inc. filed a notice of removal, removing the case to this Court on the basis of diversity of citizenship and amount in controversy. Plaintiff filed a motion to remand on March 11, 2013 (Docket No. 14). Defendants Forest Laboratories, Inc. and Forest Research Institute, Inc. and Defendants Dr. John Holcomb and Diagnostic Research Group, L.L.C. filed responses,[1] and Plaintiff filed a reply. Having considered the motion, responses, and reply, the Court finds that subject matter jurisdiction is lacking and that the instant case should be remanded to state court.

---

[1] Defendants Dr. John Holcomb and Diagnostic Research Group, L.L.C. do not oppose Plaintiff's motion to remand (Docket No. 20).

1



Removal jurisdiction raises significant federalism concerns. Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir. 1988). It is undisputed that Defendants Diagnostics Research Group (DRG) and John R. Holcomb, M.D. (Holcomb) and Plaintiff are citizens of Texas. However, Defendants Forest Laboratories, Inc. (Forest Laboratories) and Forest Research Institute, Inc. (Forest Research) contend diversity of citizenship exists because the non-diverse Defendants were improperly joined. "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." Smallwood v. Illinois Cent. R.R. Co., 385 F.3d 568, 574 (5th Cir. 2004) (en banc). The removing party proves improper joinder by demonstrating: (1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse defendant(s) in state court. Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d 529, 532 (5th Cir. 2006). As there is no allegation by Defendants of actual fraud in Plaintiff's petition, Defendants must establish improper joinder by demonstrating that there is no possibility of recovery by Plaintiff against non-diverse Defendants DRG and Holcomb. Id. To resolve this matter, the Court must conduct an analysis similar to the one used in evaluating a motion to dismiss under Rule 12(b)(6), Federal Rules of civil Procedure. In conducting this analysis, the Court

2

does "not determine whether the plaintiff will actually or even probably prevail on the merits of [her state law] claim, but look[s] only for a possibility that the plaintiff might do so." Id.   The removal statute is strictly construed in favor of remand, and any doubt regarding whether removal was proper must be resolved against federal jurisdiction. Acuna v. Brown & Root, Inc., 200 F.3d 335, 339 (5th Cir. 2000).

In her original petition, Plaintiff alleges that she participated in a pre-market study of linaclotide, a drug that was developed by Ironwood Pharmaceuticals Inc.,[2] marketed by Defendant Forest Laboratories, and studied by Defendants Forest Research, DRG, and Holcomb.   During the pre-market study, Plaintiff was repeatedly hospitalized and suffered debilitating seizures and strokes. She asserts claims of negligence against all Defendants and a claim of strict liability against Defendant Forest Laboratories. While her petition it not pled with great specificity, it cannot be said that Plaintiff has absolutely no chance of recovering against DRG or Holcomb. Because Defendants have failed to demonstrate diversity of citizenship, the Court finds that removal jurisdiction is absent in this case, and it should be remanded to state court.

---

[2] On April 25, 2013, Defendant Ironwood Pharmaceuticals, Inc. (improperly sued as Ironwood Pharmaceuticals Corporation) was dismissed from this action without prejudice (Docket No. 28).

3

It is therefore ORDERED that Plaintiff's motion to remand (Docket No. 14) be, and it is hereby, GRANTED.

It is further ORDERED that this case be, and it is hereby, REMANDED to the 407th District Court of Bexar County, Texas. The District Clerk is directed to transfer the file to the District Clerk of Bexar County, Texas.

SIGNED AND ENTERED this 30th day of May, 2013.

HARRY LEE HUDSPETH
SENIOR UNITED STATES DISTRICT JUDGE

4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SUSHMA VORA | § | |
| | § | |
| V. | § | |
| | § | |
| FOREST LABORATORIES, | § | CASE NO. 5:13-CV-00097-HLH |
| INC, FOREST RESEARCH | § | JURY TRIAL DEMANDED |
| INSTITUTE, INC., | § | |
| IRONWOOD | § | |
| PHARMACEUTICALS | § | |
| CORPORATION, | § | |
| DIAGNOSTICS RESEARCH | § | |
| GROUP, AND JOHN R. | § | |
| HOLCOMB, M.D. | § | |

## NOTICE OF FILING 120 DAY EXPERT REPORT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **SUSHMA VORA**, Plaintiff, and files this Notice of Filing 120 Day Expert Report and expert qualifications pursuant to Civil Practice & Remedies Code § 74.351 as to Defendants **JOHN R. HOLCOMB M.D.**, **DIAGNOSTICS RESEARCH GROUP** and **FOREST RESEARCH INSTITUTE, INC.** Under current law, Plaintiff is not required to file 120 day Expert Reports in Federal Court, but does so out of an abundance of caution particularly because of the Motion to Remand pending.



DEFENDANT'S
EXHIBIT

1

Plaintiff hereby files the expert report and curriculum vitae of the following witness:

Amy Mulroy, M.D.
11124 Wurzbach Road, Suite 305
San Antonio, TX 78230

Respectfully submitted,

THE LAW OFFICE OF
CHRISTOPHER DEEVES, P.C.
1370 Pantheon Way
Suite 110
San Antonio, TX 78232
Tel: (210) 445-8807
Fax: (210) 501-0915

By: _/s/ Christopher J. Deeves_
   Christopher J. Deeves
   State Bar No. 00790575
   Attorney for Plaintiff,
   Sushma Vora

2

## CERTIFICATE OF SERVICE

On the 8th day of May, 2013, the following document was served upon the following counsel of record by electronic means:

Benjamin C. Nichols
Hoblit Ferguson Darling, LLP
300 Convent Street ,Suite 1450
San Antonio, TX 78205

Harvey Ferguson, Jr.
Hoblit Ferguson Darling, L.L.P.
300 Convent Street, Suite 1450
San Antonio, TX 78205

Jeffrey D. Geoppinger
Ulmer & Berne, LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202

Joseph P. Thomas
Ulmer & Berne LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202

George "Rick" Evans
Evans & Rowe
10101 Reunion Place, Suite 900
San Antonio, TX 78216

Laura Flores Macom
Evans & Rowe, PC
10101 Reunion Place, Suite 900
San Antonio, TX 78216

_/s/ Christopher J. Deeves_

3

# AMY MULROY, MD, PA

*Adult Psychiatry*

May 6, 2013

Christopher J. Deeves
The Law Office of Christopher J. Deeves
1370 Pantheon Way, Suite 110
San Antonio, Texas 78232

Re: Treatment of Sushma Vora

Dear Mr. Deeves,

You have asked me to review the conduct of Dr. John Holcomb ("Dr. Holcomb"), Diagnostics Research Group and Forest Research Institute with regard to Sushma Vora's ("Ms. Vora") participation in an open label study of the drug linaclotide. All of my opinions in this letter are based upon a reasonable degree of medical probability.

I am familiar with the standard of care owed by Dr. Holcomb, Diagnostics Research Group and Forest Research Institute in conducting an open label study of a pre-market medication. I am of the opinion as set forth below that Dr. Holcomb, Diagnostics Research Group and Forest Research Institute breached the standard of care and that as a result of this breach Ms. Vora was hospitalized for a third time while participating in the study. Ms. Vora's third hospitalization and the pain and suffering related thereto would have been wholly prevented if Dr. Holcomb, Diagnostic Research Group and Forest Research Institute had withdrawn Ms. Vora from the study after her first two hospitalizations for side effects related to the study medication which the standard of care required them to do.

I graduated from medical school at the University of Texas Health Science Center San Antonio ("UTHSCSA") in 1993. I then completed my residency in psychiatry at the UTHSCSA in 1997. I am a licensed physician in the State of Texas and have been since 1994.

After completing my residency, I held the position of Assistant Professor in the department of Psychiatry at UTHSCSA. I became board certified in Psychiatry and Neurology in 1998. I served as adjunct faculty at UTHSCSA from 1997 to 2001. During my time on faculty at UTHSCSA I served as sub-investigator on a number of research studies. I entered private practice in 2001.

In additional to my private practice, I served as principal investigator in a number of studies of pre-market medications with Clinical Trials of Texas. I was actively involved in such studies from 2003 to 2012. I was conducting such studies as an investigator during the time period from January 2011 to July 2011.

I have conducted the following open label studies as an investigator:

2009-2010: A 28 week, open-label, safety, extension trial of "study drug" daily in premenopausal and naturally postmenopausal women with hypoactive sexual desire disorder in North America

2009-2010: A Long term, open label extension study of "study drug" in Adult patients with Major Depressive Disorder

2009-2010: A phase 2, multicenter, open-label study to assess the safety and tolerability of "study drug" as adjunctive therapy in adult patients with Major depressive disorder

2009-2010: A Long term, open label extension study of "Study Drug" as adjunctive therapy in Adult patients with Major Depressive Disorder

2005-2006: A 12 Week, Multi-Center, Open Label Study to Evaluate the Effectiveness and Safety of "Study Drug" in Hispanic Patients with Mild to Moderate Alzheimer's Disease

1998-1999: An Open Label Extension Study of "study drug" in the Treatment of Signs and Symptoms of Mania in Elderly Patients with Dementia

2010-2012: Long-Term, Open-Label, Safety Study Of "Study Drug" As Adjunctive Treatment For Patients With Major Depressive Disorder Who Are Partial Responders To Selective Serotonin Reuptake Inhibitor Treatment

2010-2012: An Open-Label, Multi-Center, Three Phase, Sequential Design, Single And Multiple Dose Study To Assess The Safety, Tolerability, And Pharmacokinetic Profile Of An Enteric Coated Once-Weekly Oral Formulation Of "Study Drug" Administered To Children And Adolescents With Tourette's Disorder

2009-2012: A Long-Term, Open-Label Extension Study of "Study Drug" In Adult Patients With Major Depressive Disorder

I have conducted the following double blind studies as an investigator:

2011-2012: The "Protocol Number" Phase 3, Multicenter, Randomized, Double-Blind, Parallel-Group, Placebo-Controlled, Flexible Dose Titration, Efficacy And Safety Study Of "Study Drug" In Combination With An Antidepressant In The Treatment Of Adults With Major Depressive Disorder With Inadequate Response To Prospective Treatment With An Antidepressant.

2011-2012: A Phase 3, Randomized, Double-Blind, Parallel-Group, Placebo-Controlled, Fixed-Dose Study Comparing The Efficacy And Safety Of 2 Doses Of "Study Drug" In Acute Treatment Of Adults With Major Depressive Disorder

2011-2012: A Phase 2, Double-Blind, Randomized, Placebo-Controlled, Two-Period Crossover Study To Evaluate The Efficacy And Safety Of "Study Drug" For The Treatment Of Tardive Dyskinesia In Subjects With Schizophrenia Or Schizoaffective Disorder

2011-2012: A Multicenter, Randomized, Double-Blind, Parallel Group, Placebo-Controlled, Phase III Efficacy And Safety Study Of "Study Drug" In Flexible Doses As An Adjunct To An Antidepressant In Patients With Major Depressive Disorder Who Exhibit An Inadequate Response To Antidepressant Therapy

2011-2012: A Multicenter, Randomized, Double-Blind, Parallel Group, Placebo-Controlled, Phase III, Efficacy And Safety Study Of 3 Fixed Dose Groups Of "Study Drug" As An Adjunct To An Antidepressant In Patients With Major Depressive Disorder Who Exhibit An Inadequate Response To Antidepressant Therapy

2011-2012: A Multi-Center, Randomized, Double-Blind, Placebo-Controlled, Parallel Group Study To Evaluate The Efficacy And Safety Of Low-Dose "Study Drug" For Adjunctive Therapy In Adult Patients With Obsessive-Compulsive Disorder Who Have Not Adequately Responded To Treatment With A Selective Serotonin Reuptake Inhibitor

2010-2012: A Phase 2, Multicenter, Randomized, Double-Blind, Placebo-Controlled Study Of The Safety And Efficacy Of "Study Drug" As Adjunctive Therapy In The Treatment Of Adults With Major Depressive Disorder

2009-2012: A 12-Week, Randomized, Double-Blind, Placebo-Controlled, Phase III Safety Trial Of "Study Drug" In Women Taking A Selective Serotonin Or Serotonin-Norepinephrine Reuptake Inhibitor With Decreased Sexual Desire And Distress

2009-2012: A Double-Blind, Placebo-Controlled, Flexible-Dose Study Of "Study Drug" In Patients With Major Depressive Disorder

2009-2012: A Twenty-Four Week, Randomized, Double-Blind, Placebo-Controlled, Safety And Efficacy Trial Of "Study Drug" Administered Orally Once Daily In Premenopausal Women With Hypoactive Sexual Desire Disorder In The United States

2009-2012: A Twenty-Four Week, Randomized, Double-Blind, Placebo-Controlled, Safety And Efficacy Trial Of "Study Drug" Administered Orally Once Daily In Naturally Postmenopausal Women With Hypoactive Sexual Desire Disorder In The United States

2009-2010: A 12-week, randomized, double-blind, placebo-controlled, Phase III safety trial of "Study Drug" tablets in women taking a Selective Serotonin or Serotonin Norepinephrine Reuptake Inhibitor with decreased sexual desire and distress

2009-2010: A Double-blind, placebo-controlled, flexible dose study of "Study Drug" in patients with Major Depressive Disorder

2008 – 2009: Randomized, Double-blind, Parallel-group, Placebo-controlled, Fixed Dose Study Comparing the Efficacy and Safety of 2 doses of "Study Drug" in the Acute Treatment of Adults with Generalized Anxiety Disorder

2008 – 2009:  Randomized, Double-blind, Parallel-group, Placebo-controlled Study of "Study Drug" in the Treatment of Depression in Patients with Bipolar I or II Disorder

2008 – Randomized, Double-blind, Parallel-group, Placebo-controlled, Fixed Dose Study Comparing the Efficacy and Safety of "Study Drug" in the Acute Treatment of Adults with Major Depressive Disorder

2007 – 2008:  A Multi-center, Randomized, Double-blind, Parallel-group, Placebo-controlled, Fixed Dose Study Comparing the Efficacy and Safety of "Study Drug" Compared with Placebo as an Adjunct to the Treatment in Patients with Generalized Anxiety Disorder who Demonstrate Partial or No Response to a Selective Serotonin Reuptake Inhibitor or Serotonin-Norepinephrine Reuptake Inhibitor Alone or in Combination with a Benzodiazepine

2007 – 2008:  A Multi-center, Randomized, Double-blind, Parallel-group, Placebo-controlled Phase III Study of the Efficacy and Safety of "Study Drug" as Mono-Therapy in the Treatment of Elderly Patients with Major Depressive Disorder (SAPPHIRE STUDY)

2007 – 2008:  A Multi-center, Randomized, Double-blind, Parallel-group, Placebo-controlled Phase III Study of the Efficacy and Safety of "Study Drug" as Mono-Therapy in the Treatment of Elderly Patients with Generalized Anxiety Disorder (CHROMIUM STUDY)

2007 – 2008:  A Six Week, Double-blind, Multi-center, Placebo-controlled Study Evaluating the Efficacy and Safety of Flexible Doses of Oral "Study Drug" in Outpatients with Bipolar I Depression

2006 – 2008:  A Multi-center, Randomized, Double-blind, Parallel-group, Placebo-controlled Phase III Study of the Efficacy and Safety of "Study Drug" as Monotherapy in the Maintenance Treatment of Patients with Generalized Anxiety Disorder Following an Open-Label Stabilization Period (PLATINUM STUDY)

2006 – 2008:  A Multi-center, Randomized, Double-blind, Parallel-group, Placebo-controlled Phase III Study of the Efficacy and Safety of "Study Drug" in Combination with an Antidepressant in the Treatment of Patients with Major Depressive Disorder with Inadequate Response to an Antidepressant Treatment

2006 – 2007:  A Multi-center, Randomized-Withdrawal, Double-blind, Parallel-group, Placebo-controlled Phase III Study of the Efficacy and Safety of "Study Drug" as Monotherapy in the Maintenance Treatment of Patients with Major Depressive Disorder Following an Open-Label Stabilization Period (AMETHYST STUDY)

2006 – 2007:  A Multi-center, Double-blind, Parallel-group, Placebo-controlled Phase III Study of the Efficacy and Safety of "Study Drug" as Monotherapy in the Treatment of Patients with Major Depressive Disorder Following (PEARL STUDY)

2006 – 2007:  A Four-Week, Double-blind, Placebo-controlled Phase III Study of the Efficacy and Safety and Pharmocokinetics of Flexible Doses of Oral "Study Drug" in Children and Adolescents with Bipolar I Disorder (Manic or Mixed)

2005-2006:  A 12 Week, Multi-Center, Open Label Study to Evaluate the Effectiveness and Safety of "Study Drug" in Hispanic Patients with Mild to Moderate Alzheimer's Disease

2005 – A Multi-Centre, Randomized, Double-Blind, Parallel-Group, Placebo-Controlled, Flexible Dose Study to Evaluate the Efficacy, Safety and Tolerability of "Study Drug" in Elderly Subjects with Major Depressive Disorder

2004 – 2005: A Multicenter, Randomized, Double-Blind, Parallel-Group, Placebo-Controlled, Flexible Dose Study to Evaluate the Efficacy, Safety and Tolerability of "Study Drug" in Elderly Subjects with Major Depressive Disorder.

2004: A Randomized, Double-Blind, Placebo-Controlled, Parallel-Group Study to Assess the Safety, Tolerability, and Efficacy of Titration and Treatment with "Study Drug" in Subjects with Mild Cognitive Impairment (MCI)"

2003 – 2004: A Multicenter, Double-Blind, Randomized, Placebo-Controlled Comparison of the Effects on Sexual Functioning of "Study Drug" in Outpatients with Moderate to Severe Major Depression over an Eight-Week Treatment Period.

2003 – 2004: A Study of (study drug) Versus Escitalopram and Placebo in the Treatment of Patients with Major Depression.

A 24-Week, Multicenter, Randomized, Double-Blind, Placebo-Controlled Evaluation of the Efficacy and Safety of "study drug" in the Patients with Dementia Associated with Cerebrovascular Disease.

A 24-Week, Multicenter, Randomized, Double-Blind, Placebo-Controlled Evaluation of the Efficacy and Safety of "study drug" in the Patients with early Alzheimer's Disease.

"The Efficacy, Safety, and Tolerability of "Study Drug" Versus Placebo, Administered for One Year in patients with Probable Alzheimer's Disease"

"Study Drug" Versus Placebo in the Treatment of Psychosis and Behavioral Disturbances Associated with Alzheimer's Disease"

A Twenty Week, Multicenter, Parallel-Group, Double-Blind, Placebo-Controlled Study of the Efficacy, Tolerability and Safety of Sertaline in the Treatment of the Behavioral Manifestation of Alzheimer's Disease in Outpatients Treated with Donepezil"

"Metrifonate Investigational Nationwide Trial, M.I.N.T."

"A Multicenter, Double-Blind Comparison of Efficacy and Safety of Seroquel (quetiapine fumarate), Haloperidol, and Placebo in the Treatment of Elderly Subjects Residing in Nursing Homes or Assisted Care Facilities and Presenting with Alzheimer's Disease and Psychoses or other Selected Psychoses"

"A Double-Blind, Placebo-Controlled Study of Depakote in the Treatment of signs and Symptoms of Mania in Elderly Patients with Dementia

Due to confidentiality I cannot provide all of the names of the drugs I studied therefore, the name of the drug has been changed to "Study Drug" in the titles of studies included on my CV.

The standards required of a physician conducting studies of experimental medications are the same regardless of what condition and/or symptoms the drug is being used to treat. In other words, the duties owed to a study participant are the same regardless of whether the drug is used to treat a psychiatric illness such as major depressive disorder or one being used to treat as irritable bowel syndrome. The duties owed by a party conducting such a study in San Antonio, Texas are the same regardless of where the entity is located.

One of the primary duties of a principal investigator, a study sponsor and studying facility is to monitor the participant for "severe adverse events." "Severe adverse events" (SAEs) are significant medical problems or outcomes that occur to the patient while in a study. SAEs include hospitalizations. All hospitalizations of a patient during participation in a research study are considered SAEs and must be reported to the sponsor and the Institutional Review Board (IRB) immediately, usually within 24 hours of being notified of the serious adverse event. If a patient reports an SAE, the standard of care requires the principal investigator to assess the symptoms, severity, and outcome to the patient as well as if the patient continues to meet requirements that make him or her an appropriate candidate for research. This assessment and determination must be made immediately and as soon after the presence of an SAE is known. An SAE Report Form must be completed for every SAE that occurs. There are some situations even, that require an SAE to be followed for up to one year after it is resolved.

If an SAE occurs with a patient in a study it is the responsibility of the Principal Investigator to immediately assess the safety of the patient and integrity of the study protocol. SAE report forms often require the Principal Investigator to make a determination as to whether the SAE is likely or unlikely related to the study drug. If an SAE does occur then it is the investigator's job to (1) assess if the patient should be removed from the study and/or (2) very closely monitor the patient thereafter. If the principal investigator makes the decision to retain a patient in a study after an SAE occurs, then it is paramount to closely monitor the patient for the reason the SAE occurred and for any other reason that suggests that the patient is not an appropriate candidate for a research study.

Some of the requirements that suggest that a patient is an appropriate candidate for research include the patient's (1) current medical condition, (2) the past medical history, (3) condition on physical examination, (4) laboratory values collected prior to enrollment in study and during the study at the successive study visits, (5) concomitant medications taken by the patient prior to the study participation and including new medications prescribed to the patient after enrollment in a study, (6) compliance by the patient to the protocol of the study, and (7) prior study participation with other trials. It is the study coordinator's job to convey the protocol requirements to the patient, but ultimately, it is the Principal Investigator's responsibility to oversee all aspects of the study and adherence to the study protocol including a determination in his/her opinion if a study

participant will be able to meet the requirements of the protocol. The investigator must assess if a patient remains an appropriate candidate for research throughout the course of the study. At any time that the investigator determines that a patient cannot meet the requirements of the protocol or is no longer an appropriate candidate for a research study then it is his/her duty to remove that patient from the study. This discretion protects the integrity of the research and of the study.

When there is a case of a patient having more than one SAE in any particular study, then it is paramount for the investigator to highly question the appropriateness of that patient to the study.

I have reviewed the documentation (clinical notes) provided by Diagnostics Research Group/ Dr. Holcomb and the study documentation provided by Forest Research Institute to Ms. Vora concerning Ms. Vora's participation in the open label study of linaclotide. This documentation shows that on February 23, 2011, Ms. Vora reported a "severe adverse event"—hospitalization in January 2011. While the initial notation for this event was pneumonia, Dr. Holcomb changed it to ileus (a bowel condition related to the side effects of linaclotide) in his report to Forest Research Institute. According to the documentation, Forest Research Institute, as the study sponsor, reviewed the information provided by Dr. Holcomb and actively participated in the decision that Ms. Vora continue in the study. The documentation indicates Forest Research Institute blessed the decision for Ms. Vora to continue in the study.

This decision is troubling. Ileus is a bowel or GI problem and is also potential side effect of the medication under study. In my opinion, a hospitalization for a potential side effect of a drug that is under study and not yet FDA approved is enough to warrant a decision to remove the patient from the study. This was not done. In fact, the patient was hospitalized twice more for GI problems while on this study medication. Thus, the three SAEs in Ms. Vora were GI related—the very area being studied.

Because Dr. Holcomb, Diagnostics Research Group and Forest Research Institute kept Ms. Vora in the study after the first SAE, the studying entities and principal investigator had a duty to very closely monitor Ms. Vora. Ms. Vora was hospitalized again for a bowel ailment in March 2011 and none of the entities conducting the study were aware of this. It is clear that Dr. Holcomb, Diagnostics Research Group and Forest Research Institute were not aware of this second SAE because it is not noted until May 23, 2011—after Ms. Vora suffered a third SAE.

It is the duty of an investigator, studying facility and study sponsor to be in close contact and observation of patients that have had one SAE during the time between study visits. This is the only way they can be aware of how the patient is doing. With the case of Ms. Vora unfortunately, two months passed between the second SAE in March 2011

*11121 Wurzbach, Suite 305 • San Antonio, TX 78230 • 210-692-1999 phone • 210-692-1904 fax*

and the discovery of it by Dr. Holcomb, Diagnostics Research Group and Forest Research Institute in May 2011.

Dr. Holcomb, Diagnostics Research Group and Forest Research Institute each had a duty to follow Ms. Vora closely following her first SAE in January 2011. If Dr. Holcomb had followed his patient closely he would have learned of her second SAE which would have required him, the study sponsor and studying facility to remove her from the study following the second related SAE. For either the study sponsor, studying facility or principal investigator to be wholly unaware of a second SAE fell below the standard of standard of care owed by each entity to closely monitor Ms. Vora.

Ms. Vora further reported that she was hospitalized for a third time on or about May 19, 2011 for vomiting and distended abdomen. Linaclotide has the risk associated with that condition. Had Ms. Vora been removed from the study and stopped taking the linaclotide after the second SAE as should have occurred, then she would not have endured the pain and suffering of the third hospitalization.

As such, the third SAE was wholly preventable and should never have happened. Ms. Vora should have been removed from the study no later than March 2011 when the second SAE occurred. If this had been done, then the May 2011 SAE would have been prevented. Indeed, Ms. Vora was removed from the study following the third SAE by Dr. Holcomb, Diagnostic Research Group and Forest Research Institute showing the decision that it was in her best interests to be terminated from participation in the study.

In my opinion, Dr. Holcomb, as principal investigator, breached the standard of care by allowing Ms. Vora to continue in the study of linaclotide after not one but two severe adverse events—the January and March 2011 hospitalizations. If Dr. Holcomb had timely removed her from the study, the third severe adverse event—the May 2011 hospitalization for which Ms. Vora was removed from the study would not have occurred.

In my opinion, Diagnostic Research Group, as the studying facility, breached the standard of care by allowing Ms. Vora to continue in the study of linaclotide after not one but two severe adverse events—the January and March 2011 hospitalizations. If Diagnostic Research Group had timely removed her from the study, the third severe adverse event—the May 2011 hospitalization for which Ms. Vora was removed from the study would not have occurred.

In my opinion, Forest Research Institute, as a study sponsor, breached the standard of care by allowing Ms. Vora to continue in the study of linaclotide after not one but two severe adverse events—the January and March 2011 hospitalizations. If Forest Research Institute had timely removed her from the study, the third severe adverse event—the May

2011 hospitalization for which Ms. Vora was removed from the study would not have occurred.

In sum, I understand that "negligence" means the failure to use ordinary care, that is failing to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances. I understand that "proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause, such event would not have occurred. In order to be a proximate cause, the act or omission must be such that a person using ordinary prudence would have foreseen that the event, or some similar event, might reasonably result there from. There may be more than one proximate cause of an event.

Here the proximate cause of the third hospitalization was the continued use of linaclotide. The third hospitalization was for a distended abdomen and vomiting, which was a known risk of the drug. Therefore it was foreseeable that the continued use of the drug would cause distended abdomen and vomiting. Ms. Vora also had already been hospitalized twice for similar injuries while taking the drug, making it foreseeable that continued use of the drug would result in distended abdomen and vomiting. But for the negligence of Dr. Holcomb, Diagnostics Research Group and Forest Research Institute in not monitoring Ms. Vora and not taking Ms. Vora off the drug following the second SAE, in reasonable medical probability, Ms. Vora would not have suffered the distended abdomen and vomiting, or the associated hospitalization and pain and suffering.

Sincerely,

Amy Mulroy, M.D.

*11134 Wurzbach, Suite 305 • San Antonio, TX 78230 • 210-692-1939 phone • 210-692-1904 fax*

# AMY MULROY, MD, PA

*Adult Psychiatry*

## Curriculum Vitae

**Business Address:**
11124 Wurzbach, Suite 305
Oak Ridge Square Offices
San Antonio, TX 78230
Phone: 210-692-1929
Fax: 210-692-1904
Email: dr.mulroy@amymulroymd.com

**Education:**
Texas A&M University, College Station, Texas 1986-1989
Bachelor of Science, Microbiology 117 of 129 hours completed

University of Texas Medical School, San Antonio, Texas 1989-1993
Doctor of Medicine

University of Texas Health Science Center, San Antonio, TX, 1993-1997
General Adult Psychiatry Internship and Residency

**Private Practice:**
February 2001- Present

Diagnosis and treatment of psychiatric conditions in adults with a focus on medication management and brief therapy interventions for the treatment of Major Depressive Disorder, Generalized Anxiety Disorder, Panic Disorder, Obsessive-Compulsive Disorder, Bipolar I and II Disorders, and Dementia Related Illness. Special interest in Addiction Medicine as it relates to psychiatric conditions and mental health as well as 12 step recovery programs.

**Investigator:**
Principal Investigator for Psychiatric Studies with Clinical Trials of Texas (CTT) 2003 – 2012

**Licensure:**
Texas, 1994, #J6417

**Board Certification:**
Diplomat, American Board of Psychiatry and Neurology, November 1998;
Recertification March 2008

AMM 5/6/13



Page 1

**Academic Appointments:**
University of Texas Health Science Center, San Antonio, TX
Assistant Professor, Department of Psychiatry, Jul. 1997/ Feb. 1999

University of Texas Health Science Center, San Antonio, TX
Clinical Assistant Professor, Department of Psychiatry
Mar. 1999/ Feb. 2001

Duties during my employment in the Department of Psychiatry at the University of Texas Health Science Center, San Antonio, TX:

- Course Co-director of Behavioral Science, First Year Medical Students
- Course Co-director of Psychopathology, Second Year Medical Students
- Psychotherapy Advisor for Psychiatry Residents
- Attending Physician at University Health System Mood Disorder Clinic
- Sub-Investigator in Dementia Research

**Professional Organizations:**
| | |
|---|---|
| 1993-2001 | Bexar County Psychiatric Society |
| 1993-2001 | Texas Society of Psychiatric Physicians |
| 1992-2001 | American Psychiatric Association |
| 1992-present | Alpha Omega Alpha Medical Honor Society |
| 1989-2001 | Bexar County Medical Society |
| 1989-2001 | Texas Medical Association |
| 1996-1997 | Texas Society of Psychiatric Physicians |

**Research:**

2011-2012: The "Protocol Number" Phase 3, Multicenter, Randomized, Double-Blind, Parallel-Group, Placebo-Controlled, Flexible Dose Titration, Efficacy And Safety Study Of "Study Drug" In Combination With An Antidepressant In The Treatment Of Adults With Major Depressive Disorder With Inadequate Response To Prospective Treatment With An Antidepressant.

2011-2012: A Phase 3, Randomized, Double-Blind, Parallel-Group, Placebo-Controlled, Fixed-Dose Study Comparing The Efficacy And Safety Of 2 Doses Of "Study Drug" In Acute Treatment Of Adults With Major Depressive Disorder

2011-2012: A Phase 2, Double-Blind, Randomized, Placebo-Controlled, Two-Period Crossover Study To Evaluate The Efficacy And Safety Of "Study Drug" For The Treatment Of Tardive Dyskinesia In Subjects With Schizophrenia Or Schizoaffective Disorder

2011-2012: A Multicenter, Randomized, Double-Blind, Parallel Group, Placebo-Controlled, Phase III Efficacy And Safety Study Of "Study Drug" In Flexible Doses As An Adjunct To An Antidepressant In Patients With Major Depressive Disorder Who Exhibit An Inadequate Response To Antidepressant Therapy

2011-2012: A Multicenter, Randomized, Double-Blind, Parallel Group, Placebo-Controlled, Phase III, Efficacy And Safety Study Of 3 Fixed Dose Groups Of "Study Drug" As An Adjunct To An Antidepressant In Patients With Major Depressive Disorder Who Exhibit An Inadequate Response To Antidepressant Therapy

2011-2012: A Multi-Center, Randomized, Double-Blind, Placebo-Controlled, Parallel Group Study To Evaluate The Efficacy And Safety Of Low-Dose "Study Drug" For Adjunctive Therapy In Adult Patients With Obsessive-Compulsive Disorder Who Have Not Adequately Responded To Treatment With A Selective Serotonin Reuptake Inhibitor

2010-2012: Long-Term, Open-Label, Safety Study Of "Study Drug" As Adjunctive Treatment For Patients With Major Depressive Disorder Who Are Partial Responders To Selective Serotonin Reuptake Inhibitor Treatment

2010-2012: An Open-Label, Multi-Center, Three Phase, Sequential Design, Single And Multiple Dose Study To Assess The Safety, Tolerability, And Pharmacokinetic Profile Of An Enteric Coated Once-Weekly Oral Formulation Of "Study Drug" Administered To Children And Adolescents With Tourette's Disorder

2010-2012: A Phase 2, Multicenter, Randomized, Double-Blind, Placebo-Controlled Study Of The Safety And Efficacy Of "Study Drug" As Adjunctive Therapy In The Treatment Of Adults With Major Depressive Disorder

2009-2012: A 12-Week, Randomized, Double-Blind, Placebo-Controlled, Phase III Safety Trial Of "Study Drug" In Women Taking A Selective Serotonin Or Serotonin-Norepinephrine Reuptake Inhibitor With Decreased Sexual Desire And Distress

2009-2012: A Long-Term, Open-Label Extension Study Of "Study Drug" In Adult Patients With Major Depressive Disorder

2009-2012: A Double-Blind, Placebo-Controlled, Flexible-Dose Study Of "Study Drug" In Patients With Major Depressive Disorder

2009-2012: A Twenty-Four Week, Randomized, Double-Blind, Placebo-Controlled, Safety And Efficacy Trial Of "Study Drug" Administered Orally Once Daily In Premenopausal Women With Hypoactive Sexual Desire Disorder In The United States

2009-2012: A Twenty-Four Week, Randomized, Double-Blind, Placebo-Controlled, Safety And Efficacy Trial Of "Study Drug" Administered Orally Once Daily In Naturally Postmenopausal Women With Hypoactive Sexual Desire Disorder In The United States

2009-2010: A Randomized Controlled Trial To Assess The Efficacy Of A Medical Food In Patients With Mild To Moderate Alzheimer's Disease Using Alzheimer's Disease Medication

2009-2010: A 12 week, randomized, double-blind, placebo-controlled, Phase III safety trial of "Study Drug" tablets in women taking a Selective Serotonin or Serotonin Norepinephrine Reuptake Inhibitor with decreased sexual desire and distress

2009-2010: A Double-blind, placebo-controlled, Flexible dose study of "Study Drug" in patients with Major Depressive Disorder

2009-2010: A Long term, open label extension study of "study drug" in Adult patients with Major Depressive Disorder

2009-2010: A phase 2, multicenter, open-label study to assess the safety and tolerability of "study drug" as adjunctive therapy in adult patients with Major depressive disorder

2009-2010: A Long term, open label extension study of "Study Drug" as adjunctive therapy in Adult patients with Major Depressive Disorder

2008 – 2009: Randomized, Double-blind, Parallel-group, Placebo-controlled, Fixed Dose Study Comparing the Efficacy and Safety of 2 doses of "Study Drug" in the Acute Treatment of Adults with Generalized Anxiety Disorder

2008 – 2009: Randomized, Double-blind, Parallel-group, Placebo-controlled Study of "Study Drug" in the Treatment of Depression in Patients with Bipolar I or II Disorder

2008 – Randomized, Double-blind, Parallel-group, Placebo-controlled, Fixed Dose Study Comparing the Efficacy and Safety of "Study Drug" in the Acute Treatment of Adults with Major Depressive Disorder

2007 – 2008: A Multi-center, Randomized, Double-blind, Parallel-group, Placebo-controlled, Fixed Dose Study Comparing the Efficacy and Safety of "Study Drug" Compared with Placebo as an Adjunct to the Treatment in Patients with Generalized Anxiety Disorder who Demonstrate Partial or No Response to a Selective Serotonin Reuptake Inhibitor or Serotonin-Norepinephrine Reuptake Inhibitor Alone or in Combination with a Benzodiazepine

Page 3

XMC56-13

2007 – 2008:  A Multi-center, Randomized, Double-blind, Parallel-group, Placebo-controlled Phase III Study of the Efficacy and Safety of "Study Drug" as Mono-Therapy in the Treatment of Elderly Patients with Major Depressive Disorder (SAPPHIRE STUDY)

2007 – 2008:  A Multi-center, Randomized, Double-blind, Parallel-group, Placebo-controlled Phase III Study of the Efficacy and Safety of "Study Drug" as Mono-Therapy in the Treatment of Elderly Patients with Generalized Anxiety Disorder (CHROMIUM STUDY)

2007 – 2008:  A Six Week, Double-blind, Multi-center, Placebo-controlled Study Evaluating the Efficacy and Safety of Flexible Doses of Oral "Study Drug" in Outpatients with Bipolar I Depression

2006 – 2008:  A Multi-center, Randomized, Double-blind, Parallel-group, Placebo-controlled Phase III Study of the Efficacy and Safety of "Study Drug" as Monotherapy in the Maintenance Treatment of Patients with Generalized Anxiety Disorder Following an Open-Label Stabilization Period  (PLATINUM STUDY)

2006 – 2008:  A Multi-center, Randomized, Double-blind, Parallel-group, Placebo-controlled Phase III Study of the Efficacy and Safety of "Study Drug" in Combination with an Antidepressant in the Treatment of Patients with Major Depressive Disorder with Inadequate Response to an Antidepressant Treatment

2006 – 2007:  A Multi-center, Randomized-Withdrawal, Double-blind, Parallel-group, Placebo-controlled Phase III Study of the Efficacy and Safety of "Study Drug" as Monotherapy in the Maintenance Treatment of Patients with Major Depressive Disorder Following an Open-Label Stabilization Period  (AMETHYST STUDY)

2006 – 2007:  A Multi-center, Double-blind, Parallel-group, Placebo-controlled Phase III Study of the Efficacy and Safety of "Study Drug" as Monotherapy in the Treatment of Patients with Major Depressive Disorder Following (PEARL STUDY)

2006 – 2007:  A Four-Week, Double-blind, Placebo-controlled Phase III Study of the Efficacy and Safety and Pharmocokinetics of Flexible Doses of Oral "Study Drug" in Children and Adolescents with Bipolar I Disorder (Manic or Mixed)

2005-2006:  A 12-Week, Multi-Center, Open-Label Study to Evaluate the Effectiveness and Safety of "Study Drug" in Hispanic Patients with Mild to Moderate Alzheimer's Disease

2005 – A Multi-Centre, Randomized, Double-Blind, Parallel-Group, Placebo-Controlled, Flexible Dose Study to Evaluate the Efficacy, Safety and Tolerability of "Study Drug" in Elderly Subjects with Major Depressive Disorder

2004 – 2005: A Multicenter, Randomized, Double-Blind, Parallel-Group, Placebo-Controlled, Flexible Dose Study to Evaluate the Efficacy, Safety and Tolerability of "Study Drug" in Elderly Subjects with Major Depressive Disorder.

2004: A Randomized, Double-Blind, Placebo-Controlled, Parallel-Group Study to Assess the Safety, Tolerability, and Efficacy of Titration and Treatment with "Study Drug" in Subjects with Mild Cognitive Impairment (MCI)"

2003 – 2004: A Multicenter, Double-Blind, Randomized, Placebo-Controlled Comparison of the Effects on Sexual Functioning of "Study Drug" in Outpatients with Moderate to Severe Major Depression over an Eight-Week Treatment Period.

2003 – 2004:  A Study of (study drug) Versus Escitalopram and Placebo in the Treatment of Patients with Major Depression.

A 24-Week, Multicenter, Randomized, Double-Blind, Placebo-Controlled Evaluation of the Efficacy and Safety of "study drug" in the Patients with Dementia Associated with Cerebrovascular Disease.

A 24-Week, Multicenter, Randomized, Double-Blind, Placebo-Controlled Evaluation of the Efficacy and Safety "study drug" in the Patients with early Alzheimer's Disease.

"The Efficacy, Safety, and Tolerability of "Study Drug" Versus Placebo, Administered for One Year in patients with Probable Alzheimer's Disease"

"Study Drug" Versus Placebo in the Treatment of Psychosis and Behavioral Disturbances Associated with Alzheimer's Disease"

A Twenty Week, Multicenter, Parallel-Group, Double-Blind, Placebo-Controlled Study of the Efficacy, Tolerability and Safety of Sertaline in the Treatment of the Behavioral Manifestation of Alzheimer's Disease in Outpatients Treated with Donepezil"

"Metrifonate Investigational Nationwide Trial, M.I.N.T."

"A Multicenter, Double-Blind Comparison of Efficacy and Safety of Seroquel (quetiapine fumarate), Haloperidol, and Placebo in the Treatment of Elderly Subjects Residing in Nursing Homes or Assisted Care Facilities and Presenting with Alzheimer's Disease and Psychoses or other Selected Psychoses"

"A Double-Blind, Placebo-Controlled Study of Depakote in the Treatment of signs and Symptoms of Mania in Elderly Patients with Dementia"

"An Open Label Extension Study of Depakote in the Treatment of Signs and Symptoms of Mania in Elderly Patients with Dementia"

TAB"D"

CAUSE NO. 2013-CI-00357

| | | |
|---|---|---|
| SUSHMA VORA | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| VS. | § | 407th JUDICIAL DISTRICT |
| | § | |
| | § | |
| FOREST LABORATORIES, INC., | § | |
| FOREST RESEARCH INSTITUTE, | § | |
| INC., IRONWOOD PHARCEUTICALS | § | |
| CORPORATION, | § | |
| DIAGNOSTIC RESEARCH GROUP | § | |
| AND JOHN R. HOLCOMB, M.D. | § | BEXAR COUNTY, TEXAS |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' JOHN R. HOLCOMB, M.D. AND DIAGNOSTIC RESEARCH GROUP, L.L.C.'S OBJECTIONS TO THE QULIFICATIONS AND REPORT OF AMY EDMONDSON MULROY, M.D. AND MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES PLAINTIFF SUSHMA VORA, and files her Response to Defendant's Objections to the Qualifications and Report of Amy Edmondson Mulroy, M.D. and Motion to Dismiss, and in support thereof, respectfully shows unto the Court as follows:

### I. FACTS

Sushma Vora pariticipated in a pre-market study of Linaclotide (now marketed as "Linzess"), a drug developed by Ironwood, marketed by Forest Laboratories, and studied by Forest Research Institute, Diagnostics Research Group and Dr. Holcomb. While participating in the study of Linaclotide, Ms. Vora was severely injured as a result of the medication. Ms. Vora was repeatedly hospitalized — something that should have never occurred had the study been conducted properly.

On or about January 11, 2011, during the study of Linaclotide, Ms. Vora suffered a

- 1 -

severe bowel ailment which resulted in injury to her, unbearable pain, and ultimately admission into the intensive care unit.

In March of 2011, Ms. Vora experienced another bowel ailment, causing serious injury to her, including great pain and suffering.

In May of 2011, Ms. Vora was hospitalized for a third time as a result of vomiting and distended abdomen, another bowel ailment.

Finally, Ms. Vora suffered seizures and strokes as a result of Linaclotide, one of which was in July 2011 and one of which was a "silent" stroke sometime prior. These seizures and strokes severely disabled her.

Ms. Vora had never experienced any similar medical conditions prior to participating in the study of Linaclotide. She had never been hospitalized prior to taking Linaclotide and was in exemplary health prior to taking Linaclotide. The only conclusion one can reach is that Ms. Vora's hospitalizations and injuries arose from her participation in the study of Linaclotide — a drug known to have potential serious consequences as it is not made available to persons under the age of eighteen.

Suit was filed in this case on January 8, 2013. Plaintiff served Defendants with an expert report in compliance with Tex. Civ. Prac. & Rem. Code § 74.351 on May 8, 2013. On May 30, 2013, Dr. Holcomb and Diagnostic Research Group filed an objection to the expert report. Defendants' objections are without merit.

## II. LAW

Pursuant to § 74.351(a), a plaintiff asserting a health care liability claim is required to

serve one or more expert reports and a curriculum vitae for each health care provider or physician against whom a liability claim is asserted. The expert report is to include: (1) a fair summary of the expert's opinions about the standard of care; (2) the manner in which the care failed to meet the standard; and (3) the causal relationship between the failure and the claimed injury. *See* Tex. Civ. Prac. & Rem. Code § 74.351(r)(6); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex.2001). The report must fulfill the dual purpose of notifying each defendant of the specific conduct called into question and providing support for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). The report should "represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." Tex. Civ. Prac. & Rem. Code § 74-351(l). The court looks only to the report in conducting a good faith inquiry. *Palacios*, 46 S.W.3d at 878.

As is clear from the statute, § 74.351 merely "establishes a threshold over which a claimant must proceed to continue a lawsuit." *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005); *see also Schmidt v. Dubose*, 259 S.W.3d 213, 217 (Tex.App. — Beaumont 2008, no pet.). These statutory provisions are virtually identical to the provisions of Tex. Rev. Civ. Stat. Art. 4590i interpreted in *American Transitional Care Centers of Texas v. Palacios*, 46 S.W.3d 873 (Tex. 2001). To constitute a good faith effort, the report must inform the defendant of the conduct the plaintiff has called into question as well as provide a basis for the trial court to conclude that the claims have merit. *Palacios*, 46 S.W.3d at 879. According to *Palacios*, the trial court should look no further than the four corners of the report itself to determine its

adequacy. *Id.* at 878. While the report must address the statutory elements set forth in Art. 4590i Sec. 13.01(r)(6) (now Tex. Civ. Prac. & Rem. Code § 74.351(r)(6)), the Court held that the report need not marshal all the plaintiff's proof, nor is a plaintiff required to present evidence in the report as if it were actually litigating the merits. *Id.* at 879. Stated another way, the expert report need not prove liability, but need only provide notice of what conduct provides the bases of the plaintiff's complaints. *Chandler v. Singh*, 129 S.W.3d 184, 188 (Tex.App.—Texarkana 2004, no pet.); *Longino v. Crosswhite*, 183 S.W.3d 913, 916 (Tex.App.—Texarkana 2006, no pet.). No magic words are necessary, and the report need only be a summary of the expert's opinions. *See Birdwell v. Texarkana Memorial Hospital*, 122 S.W.3d 473 (Tex.App.—Texarkana 2003, pet. den.). Finally, in determining whether an expert report adequately sets forth any particular element, the court is not limited to any given sentence in isolation, but, rather, the report should be read in its entirety. *See Poindexter v. Bonsukan*, 145 F.Supp.2d 800, 811 (E.D.Tex—Lufkin Div., 2001)(arising out of TMLIIA); *see also VHS San Antonio Partners v. Garcia*, 2009 WL 3223178 at *3 (Tex.App.—San Antonio, Oct. 7, 2009, pet. den.)(mem.op.); *Philipp v. McCreedy*, 298 S.W.3d 682, 690 (Tex.App.—San Antonio, July 29, 2009, no pet.); *Benavides v. Garcia*, 278 S.W.3d 794, 799, pet. den.).

An expert report in a health care liability claim is not required to be an all-encompassing text that addresses every factual aspect of the claim. Instead, the report need only provide a "fair summary of the expert's opinions." The system of challenging an expert report is not intended to be a forum to debate the facts of the case or of an attorney's

opinions of the case. *See Palacios,* 46 S.W.3d at 878 (trial court should look no further than the four corners of the report). The fact that the defendant may disagree with the expert's opinions, while perhaps proper for a motion for summary judgment, is not an appropriate basis for challenging the experts Chapter 74 report. *The Methodist Hospital v. Shepherd-Sherman,* 296 S.W.3d 193, 199 n. 2 (Tex.App.—Houston [14th Dist.] 2009, no pet.)(whether an expert's opinions are correct is an issue for summary judgment, not a motion to dismiss under Chapter 74); *see, e.g., Sanjay v. Turner,* 252 S.W.3d 460, 467 n. 6 (Tex.App.—Houston [14th Dist.] 2008, no pet.)(concluding that doctor's arguments that he did not owe duty to patient as described in expert report was an issue for summary judgment rather than a motion to dismiss); *Wissa v. Voosen,* 243 S.W.3d 165, 169-170 (Tex.App.—San Antonio 2007, pet. den.)(same). Instead, the plaintiff's burden is much lower at this stage of the litigation.

The standard of review on an appeal of an order either granting or denying a motion to dismiss on the grounds of an insufficient expert report is abuse of discretion. *Hillcrest Baptist Med. Ctr. v. Wade,* 172 S.W.3d 55, 60 (Tex.App.—Waco 2005, pet. dism'd by agr.). Likewise, abuse of discretion is the standard by which a trial court's determination of whether an expert is qualified to give an opinion in a health care liability claim is reviewed. *Larson v. Downing,* 197 S.W.3d 303, 304-305 (Tex. 2006)(per curiam); *Baylor Coll. of Med. v. Pokluda,* 283 S.W.3d 110, 116-117 (Tex.App.—Houston [14th Dist.] 2009, no pet.). An abuse of discretion occurs when a trial court acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002). Only clear failure by the trial court to analyze or apply the law

- 5 -

correctly will constitute an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

## III. ARGUMENT AND ANALYSIS

### A. Section 74.351 Does Not Apply Here

First and foremost, Section 74.351 does not apply to Plaintiff's claims. A "health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract. Tex. Civ. Prac. & Rem. Code 74.001(13). To be a healthcare liability claim, it must be shown that (1) the defendant is a health care provider or physician; (2) the claim at issue concerns treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or healthcare, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged act or omission proximately caused the injury. *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012). Element (2) is lacking here as to Dr. Holcomb. Ms. Vora was not seeking treatment or medical care but participating in a study of a pre-market medication. As to DRG, both elements (1) and (2) are missing. DRG is not a health care provider but a study institute. It also was not treating her, but studying an investigational medication. Thus, her claim is not a health care liability claim and the statute does not apply and therefore the objections and motion to dismiss are moot.

- 6 -

**B.     Dr. Mulroy Is Immensely Qualified to Opine Here**

To be able to provide a report under Section 74.351, an expert must have "knowledge, skill, experience, training, or education" regarding the specific issue before the court which would qualify the expert to opine. *Broders v. Heise*, 924 S.W.2d 148,153 (Tex. 1996). The issue before the Court is the duties owed to a participant in a study of a pre-market medication. As Dr. Mulroy states, that standard is the same whether the medication is an anti-depressant or a gastroenterological drug. From her CV and report, it is abundantly clear that Dr. Mulroy has the qualifications to opine about how to conduct a study of a pre-market medication. She conducted such studies for ten years and was doing so at the time of the study in question. The list of studies she has done is immense.

Additionally, in conducting the studies of the medications she has done, Dr. Mulroy monitors for the same side effects at issue here. Psychiatric medications have gastroenterological side effects which must be monitored. Nonetheless, Defendants argue that Dr. Mulroy has not done a study of a drug like Linaclotide or similar drug. They contend that a psychiatrist would not have the skill or expertise to conduct such a study. Ironically, Dr. Holcomb conducted this study of a pre-market medication for irritable bowel syndrome with constipation when Dr. Holcomb's primary practice is pulmonology. The same is true for the head of DRG, Dr. Charles Andrews — his listed specialty with the Texas Medical Board is pulmonology. What qualifies Dr. Holcomb and DRG to conduct such studies is that they adhere to the standard of care for a physician or institute

- 7 -

conducting such studies — not that the condition the drug is being used to treat. Dr. Mulroy knows those standards of care and they are the same for whatever drug is being studied. These objections to Dr. Mulroy's qualifications are frivolous and should be overruled.

C.     Dr. Mulroy Clearly Identifies the Standard of Care

It is hard to fathom that after reading Dr. Mulroy's report that Dr. Holcomb and DRG cannot understand the standard of care at issue. It is simply this — when researching a drug that the principal investigator monitor for Severe Adverse Events ("SAE"s) such as a hospitalization and that after an SAE the duty is even greater if the participant remains in the study to closely monitor for any future SAE. The investigator has a duty to continually monitor whether a participant can remain in the study after an SAE. Dr. Mulroy lists the factors for this evaluation and explains the standard of care as to whether a participant should continue in the study. This objection is wholly frivolous.

D.     Dr. Mulroy Sufficiently Addresses The Harm Suffered by Ms. Vora

In *Certified EMS v. Potts*, 392 S.W. 3d 625 (Tex. 2013), the Texas Supreme Court held that a §74.351 expert report need only address one theory of liability in order to be sufficient. *Potts* was also critical of vexatious and costly litigation regarding expert reports and stated that the threshold for a plaintiff's report is low. Defendants have filed the exact objection which was deemed invalid by the Supreme Court and it should be denied.

The *Potts* Court states:

> To require an expert report for each and every theory would entangle the courts and the parties in collateral fights about intricacies of pleadings rather than the merits of a cause of action, creating additional expense and delay as trial and appellate courts parse theories that could be disposed of more

- 8 -

simply through other means as the case progresses.

> While a full development of all liability theories may be required for pretrial motions or to convince a judge or jury during trial, there is no such requirement at the expert report stage ... Discovery can reveal facts supporting additional liability theories, and the Act does not prohibit a claimant from amending her petition accordingly. Under [Defendant's] reasoning, a claimant would have to serve an expert report each time a new theory is discovered. Not only would that be impractical, it would prohibit altogether those theories asserted more than 120 days after the original petition was filed."

*Potts*, 392 S.W.3d at 630-31.

Here, Ms. Vora incurred several hospitalizations in addition to seizures and a stroke. Dr. Mulroy's report addresses the severe adverse events (hospitalizations) that Ms. Vora incurred as a result of the failure to timely remove her from the study. The report sufficiently addresses her damages--the second and third hospitalizations and thus satisfies *Potts*. The report need not address every claim she would have. The report is sufficient.

E.     Dr. Mulroy's Opinions Are Not Conclusory

Defendants complain that Mulroy's report is conclusory. In reality, what is at issue is that Dr. Mulroy's opinion is so straightforward. When a patient is hospitalized, in this case repeatedly, for the side effect of the medication being studied then you remove the patient from the study. For Dr. Holcomb and DRG to now challenge that conclusion is wholly spurious as that is what did after Ms. Vora's third hospitalization for gastrointestinal issues while on the study medication. What Dr. Mulroy makes clear in her report is that it never should have taken three hospitalizations to reach this point and that after the first hospitalization or the second hospitalization for the side effects being studied,

- 9 -

Ms. Vora should have been removed from the study. Dr. Mulroy states, "a hospitalization for a potential side effect of a drug that is under study and not yet FDA approved is enough to warrant a decision to remove the patient from the study" and if removed from the study the side effects leading to hospitalization would not have occurred. It does not get much simpler than that. These objections are also frivolous and should be overruled.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF SUSHMA VORA requests the Court deny Defendants' objection. In the alternative, if the Court finds the report by Dr. Mulroy is deficient then Plaintiff request the Court grant her an extension of thirty (30) days to cure the defect, and for such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,


THE LAW OFFICE OF
CHRISTOPHER DEEVES, P.C.
1370 Pantheon Way
Suite 110
San Antonio, TX 78232
Tel: (210) 445-8807
Fax: (210) 501-0915


By: ___ */s/ Christopher J. Deeves*
CHRISTOPHER J. DEEVES
State Bar No. 00790575
chrisdeeves@att.net


JANICEK LAW FIRM, PC
1100 NE Loop 410, Suite 550
San Antonio, Texas 78209
Telephone: (210) 366-4949
Telecopier: (210) 979-6804


BETH S. JANICEK
State Bar No. 00788495
beth@janiceklaw.com


*Attorneys for PLAINTIFF*
*Sushma Vora*

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing has been forwarded the following attorneys of record via hand delivery on this the 27th day of March, 2014:

Harvey Ferguson, Jr.
Benjamin C. Nichols
Hoblit Ferguson Darling, L.L.P.
300 Convent Street, Suite 1450
San Antonio, TX 78205

Jeffrey D. Geoppinger
Joseph P. Thomas
Ulmer & Berne LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202

Brett Rowe
Laura Flores Macom
Evans Rowe Holbrook
10101 Reunion Place, Suite 900
San Antonio, TX 78216

/s/Christopher J. Deeves

- 12 -

TAB"E"

## AFFIDAVIT OF CHARLES P. ANDREWS, M.D.

STATE OF TEXAS      §
                       §

COUNTY OF BEXAR    §

        BEFORE ME, the undersigned authority, personally appeared CHARLES P. ANDREWS, M.D., who, being by me duly sworn, deposed as follows:

        My name is CHARLES P. ANDREWS, M.D. I am above the age of 18 years. I am competent and qualified to make this affidavit. I make this statement based on personal knowledge. My statements herein are true and correct to the best of my knowledge.

        I am a physician licensed by the Texas Medical Board. My license number is E4177. I am board-certified in Pulmonary Disease by the American Board of Internal Medicine.

        Diagnostics Research Group, L.L.C. is a limited liability company formed by me under the former Texas Limited Liability Company Act. On May 23, 2003, I adopted the Articles of Organization of Diagnostic Research Group, L.L.C., which were then filed in the Office of the Secretary of State of Texas, Corporations Section.

        A true and correct copy of the Articles of Organization of Diagnostics Research Group, L.L.C. filed in the Office of the Secretary of State of Texas, Corporations Section, is attached hereto as Exhibit "A."

Further Affiant sayeth not.

                                    _____
                                      CHARLES P. ANDREWS, M.D.

        SWORN TO AND SUBSCRIBED BEFORE ME by CHARLES P. ANDREWS, M.D. on this 9th day of February, 2015.

CLAIRE M. CLARK
My Commission Expires
April 06, 2016

                                    _____
                                    NOTARY PUBLIC IN AND FOR
                                    THE STATE OF TEXAS

EXHIBIT "A"



## Office of the Secretary of State

## CERTIFICATE OF ORGANIZATION
## OF

## DIAGNOSTICS RESEARCH GROUP, L.L.C.
### Filing Number: 800210221

The undersigned, as Secretary of State of Texas, hereby certifies that Articles of Organization for the above named company have been received in this office and have been found to conform to law.

ACCORDINGLY, the undersigned, as Secretary of State, and by virtue of the authority vested in the Secretary by law, hereby issues this Certificate of Organization.

Issuance of this Certificate of Organization does not authorize the use of a name in this state in violation of the rights of another under the federal Trademark Act of 1946, the Texas trademark law, the Assumed Business or Professional Name Act, or the common law.

Dated: 06/03/2003

Effective: 06/03/2003



Gwyn Shea
Secretary of State

ARTICLES OF ORGANIZATION

OF

DIAGNOSTICS RESEARCH GROUP, L.L.C.

FILED
In the Office of the
Secretary of State of Texas

JUN 03 2003

Corporations Section

I, the undersigned natural person of the age of eighteen (18) years or more, acting as organizer of a limited liability company under the Texas Limited Liability Company Act, do hereby adopt the following Articles of Organization for such limited liability company:

ARTICLE I

The name of the limited liability company is DIAGNOSTICS RESEARCH GROUP, L.L.C.

ARTICLE II

The period of duration is perpetual.

ARTICLE III

The purpose for which the limited liability company is organized is the transaction of any or all lawful business for which limited liability companies may be organized under the Texas Limited Liability Company Act.

ARTICLE IV

The address of the principal place of business of the limited liability company in Texas is 4410 Medical Drive, Suite 450, San Antonio, Texas 78229. The address of the limited liability company's initial registered office in Texas is the same as above and the name of its initial registered agent in Texas is CHARLES P. ANDREWS, M.D.

ARTICLE V

The management of the limited liability company is reserved to the members. The names and addresses of the members are as follows:

| Name | Address |
| --- | --- |
| CHARLES P. ANDREWS, M.D. | 4410 Medical Drive, Suite 440 San Antonio, Texas 78229 |

ARTICLE VI

The limited liability company shall indemnify any person who was, is or is threatened to be made a named defendant or respondent

1

in a proceeding (as hereinafter defined) because the person (a) is or was a manager or officer of the limited liability company, is or was serving at the request of the limited liability company as a director, manager, officer, partner, venturer, proprietor, trustee, employee, agent, or similar functionary of another foreign or domestic corporation, partnership, limited liability company, joint venture, sole proprietorship, trust, employee benefit plan, or other enterprise, to the fullest extent that a limited liability company may grant indemnification to a person serving in such capacity under the Texas Limited Liability Company Act, as the same exists or may hereafter be amended.

Such right shall be a contract right and shall include the right to be paid by the limited liability company for all expenses incurred in defending any such proceeding in advance of its final disposition to the maximum extent permitted under the Texas Limited Liability Company Act, as the same exists or may hereafter be amended. If a claim for indemnification or advancement of expenses hereunder is not paid in full by the limited liability company within 90 days after a written claim has been received by the limited liability company, the claimant may at any time thereafter bring suit against the limited liability company to recover the unpaid amount of the claim, and if successful in whole or in part, the claimant shall be entitled to be paid also the expenses of prosecuting such claim. It shall be a defense to any such action that such indemnification or advancement of costs of defense are not permitted under the Texas Limited Liability Company Act, but the burden of proving such defense shall be on the limited liability company. Neither the failure of the limited liability company (including its managers or any committee thereof, special legal counsel, or members) to have made its determination prior to the commencement of such action that indemnification of, or advancement of costs of defense to, the claimant is permissible in the circumstances nor an actual determination by the limited liability company (including it managers or any committee thereof, special legal counsel, or members) that such indemnification or advancement is not permissible, shall be a defense to the action or create a presumption that such indemnification or advancement is not permissible.

The limited liability company may additionally indemnify any person covered by the grant of mandatory indemnification contained above to such further extent as is permitted by law and may indemnify any other person to the fullest extent permitted by law.

As used herein, the term "proceeding" means any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, arbitrative, or investigative, any appeal in such an action, suit, or proceeding, and any inquiry or investigation that could lead to such an action, suit, or proceeding.

2

## ARTICLE VII

A manager of the limited liability company shall not be liable to the limited liability company or its members for monetary damages for any act or omission in the manager's capacity as a manager, except that this Article Seven does not eliminate or limit the liability of a manager, to the extent the manager is found liable for:

(a) a breach of a manager's duty of loyalty to the limited liability company or its members;

(b) an act or omission not in good faith that constitutes a breach of duty of the manager to the limited liability company or an act or omission that involves intentional misconduct or a knowing violation of the law;

(c) a transaction from which a manager received an improper benefit, whether or not the benefit resulted from an action taken within the scope of the manager's office; or

(d) an act or omission for which the liability of a manager is expressly provided by an applicable statute.

Neither the amendment nor repeal of this Article Seven, nor the adoption of any provision of these Articles of Organization inconsistent with this Article, shall eliminate or reduce the effect of this Article in respect of any matter occurring, or any cause of action, suit, or claim that, but for this Article, would accrue or arise, prior to such amendment, repeal, or adoption of any inconsistent provision. If the Texas Limited Liability Company Act or any successor act thereto is amended to authorize action by a limited liability company further eliminating or limiting the personal liability of managers, then the liability of a manager of the limited liability company shall be eliminated or limited to the fullest extent permitted by the Texas Limited Liability Company Act or any successor act thereto, as so amended from time to time.

## ARTICLE VIII

Any action required by the Texas Limited Liability Company Act or the Texas Business Corporation Act to be taken at any annual or special meeting of the members, or any action which may be taken at any annual or special meeting of members, may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the actions so taken, shall be signed by the holder or holders of membership interests having not less than the minimum number of votes that would be necessary to take such action at a meeting at which the holders of all membership interests entitled to vote on the action were present and voted. Prompt notice of the taking of any action by the members

3

without a meeting by less than unanimous written consent shall be given to those members who did not consent in writing to the action.

ARTICLE IX

No member shall have a preemptive right to acquire any membership interests or securities of any class that may at any time be issued, sold or offered for sale by the company.

ARTICLE X

The right of the members to cumulative voting in the election of managers is expressly prohibited.

ARTICLE XI

These articles of organization shall be effective as of the date of filing with the Secretary of State.

ARTICLE XII

The name and address of the organizer is:

CHARLES P. ANDREWS, M.D.
4410 Medical Drive, Suite 440
San Antonio, Texas 78229

IN WITNESS WHEREOF, I have hereunto set my hand this 29 day of May, 2003.

CHARLES P. ANDREWS, M.D. (Organizer)
4410 Medical Drive, Suite 440
San Antonio, Texas 78229

4

TAB"F"

<u>AFFIDAVIT OF JOHN R. HOLCOMB, M.D.</u>

STATE OF TEXAS       §

                            §

COUNTY OF BEXAR     §

BEFORE ME, the undersigned authority, personally appeared JOHN R. HOLCOMB, M.D., who, being by me duly sworn, deposed as follows:

My name is JOHN R. HOLCOMB, M.D. I am above the age of 18 years. I am competent and qualified to make this affidavit. I make this statement based on personal knowledge. My statements herein are true and correct to the best of my knowledge.

I am a physician licensed by the Texas Medical Board. My license number is E4159. I am board-certified in Internal Medicine and Pulmonary Disease by the American Board of Internal Medicine.

I am one of the defendants in *Sushma Vora v. Forest Laboratories, Inc., Forest Research Institute, Inc., Ironwood Pharmaceuticals Corporation, Diagnostics Research Group, John R. Holcomb, M.D.*, Cause No. 2013-CI-00357 in the 407th Judicial District Court, Bexar County.

I have read Plaintiff's Original Petition in the above-referenced case. I am familiar with the pre-market study of linaclotide referred to in that document. I was the principal investigator for the study conducted by Diagnostics Research Group and the physician who prescribed linaclotide to Sushma Vora in the context of that study. As the principal investigator, I had the sole power to direct the management, policies, and operations of Diagnostics Research Group as they related to the study.

Further Affiant sayeth not.

_____
JOHN R. HOLCOMB, M.D.

SWORN TO AND SUBSCRIBED BEFORE ME by JOHN R. HOLCOMB, M.D. on this 13TH day of February, 2015.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

CLAIRE M. CLARK
My Commission Expires
April 06, 2016